918 F.2d 178
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lonnie BAKER, Plaintiff-Appellant,
v.
GENERAL MILLS, INC., American Federation of Grain Millers
(AFL-CIO), an international union, American
Federation of Grain Millers Local Union
No. 58, Defendants-Appellees.
 No. 90-3036.
 United States Court of Appeals, Sixth Circuit.
 Nov. 14, 1990.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and WISEMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 In this Sec. 301 suit for breach of the duty of fair representation, plaintiff-appellant Lonnie Baker appeals from the district court's grant of summary judgment in favor of defendants-appellees. For the following reasons, we affirm.
 
 I.
 
 2
 Prior to the events leading to this litigation, Lonnie Baker had been employed by General Mills, Inc.'s Toledo, Ohio Package Foods Plant for approximately thirty-two years. During this time, Baker was a member of the AFGM Local 58's bargaining unit. In June of 1987, the hourly gluer job classification, which Baker had held for six or seven years, was eliminated. The American Federation of Grain Millers (AFGM) International and AFGM Local 58 represent bargaining unit employees at General Mills in Toledo and have had a collective bargaining agreement with General Mills for many years. This collective bargaining agreement consists of a Master Agreement covering sixteen different locations and a Supplemental Agreement specifically covering the Toledo plant. Louis Blachowski, President of Local 58, advised the employees that a grievance had been filed by the union committee to cover all problems related to the elimination of jobs and that individual grievances were not necessary or warranted. Grievance 319-7, dated June 1987, was filed to cover all of the problems relating to the job eliminations. Brief of Baker at 2. When all three gluer jobs were eliminated, Baker was demoted to the classification of sweeper. One of the issues raised in the group grievance was whether, pursuant to the collective bargaining agreement, the three former gluer job employees should be allowed to immediately displace or "bump" other employees in a higher classification but with less seniority. The "bumping rights" in the collective bargaining agreement were interpreted by Local 58 officials to apply to laterally-equal or lower-level positions, not higher positions. Local 58, however, wanted to get the International Union's advice on this matter. Prior to International's response to the Local's request for advice, Baker filed a grievance on August 27, 1987, requesting more information from Local 58 regarding the basis for its position on the "bumping" issue. No action was taken on this individual grievance while the June 1987 group grievance was still pending. Local 58 officials believed that Baker's individual grievance was covered in the group grievance.
 
 
 3
 In November of 1987, Robert Willis, General President of the International Union, issued a written response to the Local's inquiry regarding bumping rights. Willis advised the Local that "there is nothing wrong with the Local Union restricting the right of employees to exercise their seniority in the same or lower rated classification as long as it does not result in a senior employee experiencing a lay-off." Brief of General Mills at 3. Later, in another inquiry from Local 58, Willis advised that the past practices of the parties could control, if the Supplemental Agreement for the Toledo plant was silent on the issue. Id. at 3-4. Determining that the Supplement Agreement was silent on the matter, Local 58 ruled that past practice prohibited bumping upward.
 
 
 4
 Notwithstanding the above determination, and in an attempt to settle the group grievance, Local 58 and General Mills reached a compromise wherein the company would allow those displaced by the job elimination to bump up a classification and also would give those employees $800.00. Baker rejected this offer on the ground that the cash settlement was too low. In April of 1988, Local 58 decided that it would be inadvisable to proceed to arbitration on the group grievance. The Executive Board of Local 58 reached this decision because of the past practice of not allowing bumping upward and because they believed that arbitration would produce the same or a substantially similar compromise to the one previously reached but rejected by Baker. In addition, because Local 58 believed that Baker's individual grievance was covered in the group grievance, Local 58 decided not to arbitrate it also. Baker appealed this decision to the union without success.
 
 
 5
 On January 6, 1989, plaintiff-appellant Lonnie Baker filed this complaint in the United States District Court for the Northern District of Ohio against defendants-appellees General Mills, Inc., the American Federation of Grain Millers, International and the American Federation of Grain Millers, Local No. 58. Baker alleged that the unions breached their duty of fair representation under the terms of certain collective bargaining agreements and that General Mills and the unions caused permanent demotion, disciplinary harassment and economic loss to the plaintiff. The two labor unions moved for summary judgment on the breach of the duty of fair representation claim. The district court, Judge John W. Potter presiding, granted the unions' motions for summary judgment on the ground that Baker failed to come forth with specific facts showing that the unions had violated the duty of fair representation. Because the claim against General Mills was contingent upon the success of the actions against the unions, General Mills was also dismissed. It is from the grant of summary judgment that plaintiff-appellant Lonnie Baker appeals.
 
 
 6
 In ruling on defendants-appellees' motions for summary judgment, the district court analyzed plaintiff-appellant's breach of duty claim under the three-prong standard established by the Supreme Court in Vaca v. Sipes, 386 U.S. 171, 194 (1967). With respect to the first prong, whether the union treated all factions and segments of its membership without hostility, the district court found that
 
 
 7
 "plaintiff has set forth no real evidence of any hostility on the part of either Union toward him individually. The mere refusal to pursue plaintiff's grievance to arbitration is not probative of hostility particularly where the union, as the Local did in this case, declines to pursue a virtually identical grievance on behalf of employees similarly situated. Moreover, with respect to the International, plaintiff conceded in his deposition that no one at the International displayed hostility or ill will toward him and his correspondence was always promptly answered by the International."
 
 
 8
 J.App. at 25. Concerning the second prong, whether the discretion exercised by the union in asserting the rights of its members was exercised in good faith and honesty, the district court concluded that "[plaintiff] has presented no evidence that either union's conduct fell below that standard." Id. In discussing the relevance of General Mills' initial conclusion that past practices did not dictate that employees in plaintiff's position were precluded from bumping upward, the lower court stated that this "does not in and of itself create an inference that the Unions acted in bad faith or dishonestly in not pursuing the grievance to arbitration." Id. Finally, regarding the third prong, whether the unions' conduct was arbitrary, the district court concluded that the unions conduct was based on rational criteria, "what it believed to be past practice of the Local and Company." Id. Hence, after applying the three-prong Vaca standard to the facts in the present case, the lower court concluded that defendant-appellees were entitled to summary judgment as a matter of law.
 
 II.
 
 9
 We review the district court's grant of summary judgment de novo. Pinney Dock and Transport Co. v. Penn. Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). Further, when reviewing a grant of summary judgment, this court applies the same test as that used by the district court. United States v. Duffy, 879 F.2d 192, 195 (6th Cir.1989). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1310 (6th Cir.1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). Finally, in deciding a motion for summary judgment, the court must draw all justifiable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). After reviewing the district court's grant of summary judgment de novo, we conclude that the district court did not err.
 
 
 10
 A breach of duty of fair representation may be demonstrated by the proof of one of the following elements: hostility by the union, arbitrary conduct, reckless disregard for the interests of unit employees, or bad faith. Ackley v. Local Union 337, International Broth. Teamsters, No. 89-1135 (6th Cir. Aug. 1, 1990) (citing Vaca v. Sipes, 386 U.S. 171 (1967); Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1355 (6th Cir.1989), cert. denied, 110 S.Ct. 2206 (1990) (citing Vaca, 386 U.S. 171. Baker attacks the district court's grant of summary judgment on the ground that the unions' conduct was arbitrary. The conduct of the unions which appellant attacks as arbitrary is the unions' determination that the practice of "bumping upward," displacing a junior employee in a higher classification, was prohibited by past practice. Upon the advice of the International Union, Local 58 concluded that bumping upward was not allowed because it had not been allowed in the past at General Mills Toledo. Baker contends that this determination was arbitrary because the unions presented no evidence to show that bumping upward had been disallowed in the past and because the management of the Toledo plant did not recognize the existence of a past practice prohibiting bumping upward.
 
 
 11
 It is well-settled that union officials may rely on a prevailing practice in deciding whether to arbitrate a grievance and that such reliance does not amount to the arbitrariness necessary to constitute a breach of the duty of fair representation. Ruzicka v. General Motors Corp., 649 F.2d 1207, 1211-12 (6th Cir.1981). The court in Ruzicka, however, left open the question of whether the past practice relied upon by union officials must exist in fact. Baker frames the dispositive issue here as whether there was in fact a prevailing past practice. If the unions negligently or mistakenly determined that there was a past practice regarding bumping upward, this alone is not sufficient in and of itself to show that their determination was arbitrary. Cf. Ruzicka v. General Motors, 649 F.2d 1207, 1212 (6th Cir.1981). Errors in judgment do not constitute arbitrariness. Poole v. The Budd Co., 706 F.2d 181, 183 (6th Cir.1983) (citations omitted). We realize that the lack of a past practice may create an inference that any reliance upon a "non-existent" past practice was arbitrary. In our view, however, given the particular circumstances of this case, we think the appropriate question is whether the unions' determination that there was a past practice of prohibiting bumping upward was reasonable, in good faith and thus not arbitrary.
 
 
 12
 This court has stated that "A union's conduct may be sufficiently arbitrary to establish a breach of its duty to fairly represent its members when it handles a grievance in a 'perfunctory' manner, with caprice or without rational explanation." Id. at 183 (citations omitted). The primary evidence upon which Baker relies to establish the arbitrariness of the unions' conduct is the fact that General Mills Toledo initially stated that upward bumping was allowed. This evidence alone, however, is not sufficient to show that the determination that past practice forbade bumping was arbitrary. Baker contends that the company did not change its initial stance on the issue, if at all, until advised to do so by the unions. Appellees, on the otherhand, assert that General Mills' initial position on this issue was taken by a new labor relations person who was unfamiliar with the prevailing practice of the Toledo plant. The record is unclear regarding the rationale behind the company's final conclusion with respect to whether past practice forbade bumping upward. What is clear, however, is that the company eventually agreed with, or at the very least acquiesced in, the unions' conclusion that past practice forbade upward bumping. See Brief of Local 58 at 3 n. 2 and 10 n. 3.
 
 
 13
 The record reveals that Local 58 reasonably believed in good faith that a prevailing past practice prohibited bumping. Local 58 attempted with reasonable diligence to determine whether bumping upward was allowed. Based upon their interpretation of the collective bargaining agreement and prevailing past practice, Local 58 determined that Baker could not bump a higher classified but junior employee. To insure the correctness of this determination, however, the local union sought the advice of the International Union on this matter. The International Union agreed with the Local union's determination, including Local 58's reliance on a past practice regarding upward bumping. The record reveals that the Local union did not act in a perfunctory manner before making its determination, whether correct or incorrect. Moreover, Baker himself was unable to present any evidence that bumping upward had occurred in the past. J.App. at 107-110 (deposition of Lonnie Baker).
 
 
 14
 Baker rejected a compromise settlement which would have allowed him to bump up a classification and receive $800.00. After an Executive Board meeting, the Local union decided not to proceed with arbitration because it believed that the collective bargaining agreement and past practice between the union and the company prohibited bumping upward and at best, arbitration would not produce a better result than the compromise offer. As in Poole, the unions in the present case clearly had a rational basis for making their decision not to press on with Baker's grievance. Whether the unions' judgment in this respect was flawed and their interpretation of the bargaining agreement incorrect is not determinative of the question before us. See Poole, 706 F.2d at 184; Dill v. Greyhound Corp., 435 F.2d 231, 238 (6th Cir.1970), cert. denied, 402 U.S. 952 (1971).
 
 
 15
 "The grievance process is not expected to be error free and the courts should hesitate to interfere with legitimate internal union decisions which fairly evaluate whether a claim warrants resort to the arbitral machinery." Poole, 706 F.2d at 184 (citations omitted). The record indicates that the unions' decision not to arbitrate Baker's grievance was not arbitrary but based upon rational criteria. Baker has failed to come forth with "specific facts" to show that there is a genuine issue of material fact with respect to whether the unions' belief that past practice forbade bumping upward constituted arbitrary conduct. Therefore, we conclude that the issue of whether the unions conduct was arbitrary to be so one-sided that the defendants-appellees must prevail as a matter of law. Further, other arguments made by the appellant have been considered and found to be without merit.
 
 III.
 
 16
 For the foregoing reasons we AFFIRM the district court's grant of summary judgment in favor of defendants.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., Chief District Judge for the Middle District of Tennessee, sitting by designation