Leonard K. LINTON, Plaintiff,

v.

UNITED PARCEL SERVICE and International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 243, Defendants.

No. 89–71621.

United States District Court,
E.D. Michigan, S.D.

Dec. 20, 1991.

Barbara Harvey, Detroit, Mich., for Leonard K. Linton.

George Geller, Farmington Hills, Mich., for Intern. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 243.

Mark Nelson, Detroit, Mich., for United Parcel Service.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### INTRODUCTION

This action is before the Court on remand from the Sixth Circuit Court of Appeals. Defendant Teamsters Local 243 ("Union") filed a Motion for Summary Judgment on August 30, 1991 in which Defendant United Parcel Service ("UPS") joined. Defendants allege that, as a matter of law, the Union did not breach its duty of fair representation in its handling of Plaintiff Leonard Linton's ("Plaintiff") grievance. On September 26, 1991, Plaintiff filed a response to Defendants' motion. Plaintiff counters that there is a genuine issue of material fact as to whether the Union fulfilled its duty of fair representation.

### FACTS

On April 25, 1989, Plaintiff initiated this hybrid § 301/breach of duty of fair representation action ("301 action") pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), alleging that his discharge from Defendant UPS had been without cause and that the Union had breached its duty of fair representation in failing adequately to advance his claim through the grievance procedure.

Both parties to this action were subject at all relevant times to the terms of a collective bargaining agreement, the National Master United Parcel Service Agreement ("NMUPSA"). Article 17 of that agreement provides that an employee shall be discharged only for just cause. Dishonesty is listed as one of several factors

clearly considered to be just cause for termination.

In August 1979, Plaintiff first applied for employment with UPS. At this time, he completed an employment application which contained the following question: "Have you ever been convicted of a crime?" Linton responded to this inquiry in the negative. The last page of the application read, in pertinent part:

> In signing this application for employment, I understand that misrepresentation or omission of facts is cause for cancellation of this application or separation from the Company's service if I am employed. I agree that the Company shall not be liable in any respect if my employment is terminated because of the falsity of statements, answers or omissions made by me on this application.

Plaintiff was hired as a part-time loader-unloader in 1979.

He worked for UPS in that capacity until September 1988 when he applied for the position of "next-day special air driver." In connection with his application for this new position, Plaintiff was asked to fill out another employment application which contained the same question regarding a criminal history. Plaintiff's response was again in the negative. The application also contained a statement, virtually identical to that noted above, explaining that misrepresentation or omission of facts would be cause for discharge.

After Plaintiff completed this application, UPS ran a routine check on him. It found that on May 4, 1976 he had been convicted of a crime, "Loitering Where Marijuana is Kept." This was prior to the completion of both UPS applications.

Upon receiving the results of the criminal history check, UPS confronted Plaintiff with the information and asked him to explain the discrepancy between his employment applications and the criminal history check. Dissatisfied with his explanation, UPS terminated his employment on October 17, 1988. In a letter to Plaintiff dated October 17, 1988, UPS stated that his employment with UPS was being terminated because "the employment applications submitted to UPS on August 7, 1979 and on September 20, 1988 were falsified."

Plaintiff filed a grievance with the Union protesting his discharge. Union vice president and business agent Leon Cooper ("Cooper") processed Plaintiff's grievance on behalf of the Union. A meeting was held between Cooper, Plaintiff, and Company representative Frank Alphonso ("Alphonso") to discuss the circumstances surrounding Plaintiff's conviction and request for reinstatement. Alphonso refused to accept Cooper's argument in favor of Plaintiff's reinstatement. In accordance with the applicable collective bargaining agreement procedures, Cooper arranged a local hearing with Plaintiff, Company, and Union representatives to seek formal resolution of Plaintiff's grievance. Prior to that hearing, Cooper allegedly met with Plaintiff several times, reviewed the police report regarding Plaintiff's conviction, and attempted to contact the individual arrested with the Plaintiff in 1976.

At the local hearing, the Company rejected Cooper's efforts to have Plaintiff reinstated. Cooper then proposed that the Company allow Plaintiff to "voluntarily resign for personal reasons" in lieu of a discharge. The Company accepted this proposal. Plaintiff acquiesced at first but changed his mind after consulting with Union steward Bob Naslonic who, it seems, suggested that he reject the offer and take the grievance to the next step of the grievance procedure, a hearing before the state committee.[1]

---

**1.** The grievance procedure is set forth under Article 5 of the NMUPSA. It provides for a series of steps in the event of an employee grievance. First, the employee is to discuss the grievance with his supervisor. If this proves unsuccessful, the employee's Union steward is to attempt to resolve the matter with the supervisor. If the steward and supervisor fail to agree, the Union, employee, and employer have a local hearing formally to discuss the matter. Finally, if the parties fail to agree, the matter goes to the state or joint area committee. The Article states that "[i]f the parties fail to reach a decision or agree upon a settlement in the mat-

By letter dated October 28, 1988, Plaintiff informed Cooper that he wished to appeal his case. In response, Cooper informed Plaintiff by letter dated November 3, 1988 that the decision reached at the local hearing was final and binding. A second letter to Plaintiff dated November 10, 1988 reiterated this statement and further apprised Plaintiff that Cooper and the Union "consider your grievance dated above as denied and closed." The Plaintiff then instituted the instant action.

In its June 19, 1990 Memorandum Opinion and Order, 1990 WL 282592, the Court, per Judge Suhrheinrich, granted the Defendants' motions for summary judgment. In that Opinion and Order, the Court addressed only the issue of whether UPS had "just cause" to terminate the Plaintiff under the collective bargaining agreement when it was discovered that Plaintiff had submitted false information on his employment application. The District Court relied on the standard contained in the employment application, namely, whether the applicant misrepresented himself or omitted facts. It found, as a matter of law, that the Company had just cause to terminate the Plaintiff: "For purposes of the instant case then, Linton's responses in the employment application forms were false and the Company therefore had 'just cause' for terminating him since the terms of the employment application form unequivocally stated that misrepresentation or omission of fact constituted grounds for termination."

The Sixth Circuit reversed this decision on appeal in *Linton v. UPS*, No. 90–1915 (6th Cir. June 19, 1991) [933 F.2d 1008 (table)]. That court held that the terms of the collective bargaining agreement, not the employment contract, control the relationship between an employee and employer.[2] Under the terms of the collective bargaining agreement, an employee may be terminated only for just cause.[3] Although dishonesty constitutes just cause for termination, the Court of Appeals held that the lower court failed to find that Plaintiff was dishonest, i.e., that he had the intent to deceive. Whether the Plaintiff had the intent to deceive, the court said, is a question of fact for the trier of fact to decide.[4] If the Plaintiff lacked the intent to deceive, then whether innocently providing false information on the application constituted just cause, said the court, is a mixed question of law and fact inappropriate for determination on summary judgment: "Providing false information on the application may also be a basis for finding just cause for termination. However, it is not just cause as a matter of law. The collective bargaining agreement provides a method of determining just cause, which is a mixed question of law and fact." *Linton*, No. 90–1915, slip op. at 4.

As to whether the Union breached its duty of fair representation, the Sixth Circuit said only the following:

The District Court did not rule on the question of whether plaintiff was denied

ter, it shall be submitted to the state committee...."

**2.** The court cited *J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944). There the Supreme Court said:

We cannot except individual contracts generally from the operation of collective ones because some may be more individually advantageous. Individual contracts cannot subtract from collective ones, and whether under some circumstances they may add to them in matters covered by the collective bargain, we leave to be determined by appropriate forums under the laws of contracts applicable, and to the Labor Board if they constituted unfair labor practices.

*Id.* 64 S.Ct. at 581.

**3.** The collective bargaining agreement reads, in relevant part:

The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of a complaint against such employee to the employee in writing and a copy of the same to the Union, except no warning notice need be given to any employee before he/she is discharged if the cause of such discharge is:

(a) dishonesty.

\* \* \* \* \* \*

It is understood that there are other offenses of extreme seriousness that an employee will be discharged for without a warning letter. Article 17, NMUPSA.

**4.** The court said: "Dishonesty includes a component of intent to deceive. Thus, if dishonesty is the standard, the issue then is whether Linton had the requisite intent to deceive." *Linton*, No. 90–1915, slip op. at 4.

that process [just cause dismissal] by reason of the union's alleged breach of the duty of fair representation. *Although the union urges us to rule on its motion for summary judgment that there was no such breach, we decline to do so in the first instance. The issues are not properly decided on summary judgment.*

*Linton,* No. 90–1915, slip op. at 4 (emphasis added).

■ The use of "issues" in the last sentence is rather cryptic. Plaintiff, of course, urges that the Court of Appeals intended this disapproval of summary judgment to include "issues" relating to the Union's alleged breach of its duty as well as the claims against the employer. The Union, on the other hand, focuses on the previous sentence and argues that the phrasing of the last sentence was unintentionally broad and encompassing. In this Court's view, both interpretations have merit.

The Court of Appeals first declined to rule on the Union's motion for summary judgment because the duty of fair representation issue had not been addressed by the lower court, saying it does not wish to do so "in the first instance." However, the court then clearly stated that "[t]he issues are not properly decided on summary judgment." If the Court accepts the Plaintiff's interpretation that "the issues" includes those issues relating to the duty of fair representation claim against the Union, then it would have to find that the Court of Appeals did, in fact, effectively rule on the merits of the Union's summary judgment motion by denying it and holding that these issues "are not properly decided on summary judgment." It would have to do so despite that court's statement that it would not rule on the Union's claims in the first instance. Therefore, interpreted as Plaintiff urges, the last phrase would be irreconcilable with the sentence immediately preceding it.

The only way this Court can reconcile these conflicting phrases is to construe the phrase "the issues" as referring to the two issues—(1) the breach of the collective bargaining agreement and (2) the breach of the duty of fair representation—in different contexts. The Court of Appeals held that the collective bargaining agreement issue, which it had before it, was not ripe for summary judgment because there existed questions of fact; the duty of fair representation issue was not ready for summary judgment *on appeal* because the District Court had not addressed that issue. (This would explain the court's declination to rule on the summary judgment motion on appeal "in the first instance.") Thus, each issue was inappropriate for summary judgment *by the Court of Appeals* for different reasons. Therefore, despite the Sixth Circuit's decision that there remains an issue of fact as to the collective bargaining agreement claim, the Court believes that the duty of fair representation issue is ripe for summary judgment review by this District Court.

## STANDARD OF REVIEW

Summary judgment is proper " 'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Fed. R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standard of review for a summary judgment motion. These cases, in the aggregate, lower the movant's burden on a summary judgment motion.[5] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for dis-

---

**5.** "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure,* § 2727, at 29 (1991 Supp.).

covery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex,* 106 S.Ct. at 2552.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989). The Court will apply the above principles to the following discussion.

## DISCUSSION

### A. *Interdependency of Claims*

The Supreme Court and Sixth Circuit have consistently held that a plaintiff in a 301 action must prove both that the union breached its duty of fair representation and that the Company breached the collective bargaining agreement. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990); *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *White v. Anchor Motor Freight, Inc.,* 899 F.2d 555 (6th Cir.1990).

In passing labor laws, Congress intended, in part, to encourage dispute resolution by the parties themselves through mutually satisfactory mechanisms negotiated in the collective bargaining process:

Experience has proven that protection by law of the right of employees to organize and bargain collectively safeguards commerce from injury, impairment, or interruption, and promotes the flow of commerce by removing certain recognized sources of industrial strife and unrest, by encouraging practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours, or other working conditions, and by restoring equality of bargaining power between employers and employees.

29 U.S.C. § 151. The courts have recognized that this congressional intent could be effectuated "only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given fully play." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976) (quoting *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960)). The *Hines* Court added that

[t]hey [courts] should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their disputes. Otherwise "plenary review by a

court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final."

*Id.* (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960)). The courts have thus shown great deference to the dispute resolution mechanisms chosen by the parties to a labor dispute.

■ However, when a union has failed adequately to represent an employee, the courts have interfered to resolve the dispute. As noted by the Supreme Court:

> Under this doctrine [duty of fair representation], the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

*Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). Thus, if a court finds that the union has breached its duty of fair representation, it will not hesitate to review and resolve the dispute. Conversely, however, absent a finding of bad faith, discrimination, or arbitrariness on the part of the union, the courts will not interfere in the internal grievance process.

■ Therefore, when an employee covered by § 301 of the LMRA brings an action against his employer, he is necessarily suing his union as well. He is stating, in effect, that he was wronged by his employer and that his union did not adequately protect his interests when he attempted to remedy this wrong. If he could not say that his union failed to protect his interests, he could not sue his employer because the result of the validly conducted grievance procedure would be final and binding and a court would be forced to defer to that determination. *Lucas v. Leaseway Multi Transporation Service, Inc.,* 738 F.Supp. 214, 220 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991) ("Since plaintiff's count as to the duty of fair representation fails, plaintiff's other count alleging a

breach of the CBA also must fail"). Conversely, without a valid claim against the employer, the union could not be challenged because no duty to the employee would have been triggered. *White v. Anchor Motor Freight, Inc.,* 899 F.2d 555, 559 (6th Cir.1990) ("[I]f the first claim anchored in the employer's alleged breach of the collective bargaining agreement fails, then the breach of duty of fair representation claim against the union must necessarily fail with it"). This interdependence of claims in the § 301 context has been noted and approved by the Sixth Circuit:

> In this hybrid suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to recover against *either* the Company *or* the Union, Bagsby must show that the Company breached the Agreement *and* that the Union breached its duty of fair representation. Unless Bagsby demonstrates *both* violations, he can not succeed against either party.

*Bagsby v. Lewis Bros., Inc.,* 820 F.2d 799, 801 (6th Cir.1987) (citation omitted) (emphasis in original). *See also Black v. Ryder/P.I.E. Nationwide, Inc.,* 930 F.2d 505, 510 (6th Cir.1991) ("In any event, when the union cannot be held liable for unfair representation, of course, the employer cannot be held liable for breach of the collective bargaining agreement"). Therefore, it is axiomatic in a 301 action that resolution of one of the two claims necessarily dispenses with the whole action.

## B. *Duty of Fair Representation*

The Supreme Court set the parameters of the duty of fair representation in the seminal case of *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). On the one hand, the Court said, the union, as the employee's exclusive bargaining representative, has a statutory duty to fairly represent the employee. On the other hand, this duty is not invoked at the whim of the employee:

> Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbi-

tration regardless of the provisions of the applicable collective bargaining agreement.

*Id.* 87 S.Ct. at 917. The Court struck a balance between these competing principles. It determined that a union has not breached its duty of fair representation unless its conduct toward its members was arbitrary, discriminatory, or in bad faith. This balance has remained virtually unchanged through the present day. *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990); *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

In *Air Line Pilots Association, International v. O'Neill,* — U.S. —, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991), the Court explained the standard of "arbitrariness" in a duty of fair representation case as follows:

> We further hold that a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is *so far outside a "wide range of reasonableness" as to be irrational.*

*O'Neill,* 111 S.Ct. at 1130 (emphasis added) (citation omitted). The Court will use the above standard to determine whether the Union's actions in the instant case were arbitrary.[6]

### C. *Plaintiff's Claims*

Having established the parameters of the Court's analysis, the Court now looks to the Plaintiff's claims to determine whether they can survive summary judgment. The initial burden is on the Union to demonstrate to the Court that the Plaintiff has no evidence to support an essential element of his case, that is, to support the claim that the Union acted arbitrarily.

Essentially, the Plaintiff makes two arguments. First, he claims that the collective bargaining agreement mandates automatic appeal at each step of the Article 5 grievance procedure. Therefore, when the Union failed to appeal from the local hearing, it breached the collective bargaining agreement and, therefore, acted arbitrarily. Second, even if the Union was not under a duty to appeal the adverse ruling, failure to exercise its discretion to do so was arbitrary under the circumstances.

1. Breach of the Collective Bargaining Agreement

■ The first issue is whether the collective bargaining agreement mandates appeal from the local hearing to the joint committee hearing. Article 5, § 1 of the collective bargaining agreement reads, in relevant part, as follows:

> In the event of any grievance, complaint, or dispute on the part of any employee, it shall be handled in the following manner, and *a decision reached at any stage shall be final and binding on both parties.*
>
> The grievance shall be discussed with the employee's immediate supervisor or with the aggrieved employee, his/her shop steward and the immediate supervisor. If the grievance is not resolved within one (1) working day;
>
> (a) The employee shall report it to his/her shop steward in writing within five

6. A review of the record and statements made at oral argument reveals that the parties focus their attention on the "arbitrary" prong of *Vaca.* At no point in the record does Plaintiff state that his dismissal was discriminatory. Likewise, Plaintiff does not explicitly state that the Union acted in bad faith. There are, however, several statements peppered throughout the Plaintiff's brief implying that the Union acted with less than good faith. Plaintiff charges that the Union, through Cooper, abruptly changed its position from one of support to one of antagonism; became angry when Plaintiff refused a voluntary quit; distorted the grievance procedure in communications with Plaintiff; and intentionally misled Plaintiff through some of its representations.

Plaintiff's intimation that the Union acted in bad faith, however, is not supported by the record, nor by any statement made at oral argument. The record reveals that, at all points during its representation, the Union acted in the manner it felt would best serve the interests of its member. As the Court is unable to find any support for the imputation that the Union acted in bad faith, it will confine its analysis to the question of arbitrariness.

(5) working days. The steward shall attempt to adjust the matter with the supervisor within forty-eight (48) hours.

(b) Failing to agree, the shop steward shall promptly report the matter to the Union which shall submit it in writing and attempt to adjust the same with Employer within five (5) working days.

(c) *If the parties fail to reach a decision or agree upon a settlement in the matter, it shall be submitted to the state committee or UPS Joint Area Committee, whichever is applicable, within fifteen (15) days.* Any cases not resolved at the state level shall then be submitted to the UPS Joint Area Committee within fifteen (15) days.

NMUPSA, Article 5, § 1 (emphasis added).

The dispute between the Plaintiff and the Defendants centers around the meaning of "parties" in Article 5, § 1(c). The Union argues that "parties" refers to the Union and the Company. In this instance, the parties did not fail to reach a decision. Rather, they decided at the local hearing, conducted pursuant to Article 5, § 1(b), that the Company would discharge the Plaintiff but would give him the opportunity to file a voluntary quit. Therefore, as the parties did not "fail to reach a decision," they were not required to pursue the grievance to the next stage.

The Plaintiff counters that "parties" refers to the *grievant* and the Company and states in his brief: "Under the UPS grievance procedure, *all* grievance cases are required to be appealed to the joint committee, if that is what the grievant desires." [7] Until the grievant reaches an accord with the employer, says Plaintiff, the Union must continue to represent the employee at each successive stage of the grievance process.[8] As the grievant in this case did not accept the proposal of the Company, the parties had failed to reach a decision. Having failed to reach a decision, it was incumbent upon the Union to advance the grievance to the next stage of the procedure. At oral argument, Plaintiff observed that this interpretation is supported by the past practice of the Union in which all such cases had gone from the local to the joint committee level.[9]

■ The construction of a collective bargaining agreement is a question of law to be determined by the court. *Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.,* 749 F.2d 315, 317–18 (6th Cir.1984), *cert. denied,* 471 U.S. 1017, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985); *Bagsby,* 820 F.2d at 802. Upon review of the collective bargaining agreement, the Court concludes that "parties," as used in Article 5, § 1, refers to the Union, as representative of the employee, and the Company.[10] "Decision" thus refers to a mutual

7. Curiously, at another point in his brief the Plaintiff appears to argue against this position. He says, "The 'final and binding' decision referred to in the contract was a *mutual resolution of the grievance by the company and the union*" (emphasis in original). This is essentially the Union's position.

8. At oral argument, Plaintiff's counsel, upon questioning by the Court, admitted that this interpretation would compel a union to appeal even the most mundane, petty, and obviously groundless complaints at the whim of the employee; however, counsel responded that such grievances could be summarily disposed of at the joint committee level.

9. At oral argument, Plaintiff's counsel added that while typically a union will have discretion to take a case to arbitration, in this case, as there is no arbitration but rather a joint committee system, the Union has no discretion to

refuse arbitration. Counsel failed to support this distinction and the Court has found no precedent that suggests that courts make distinctions between grievance procedures based on the presence of a single arbitrator as opposed to a joint committee. *See Teamsters Freight Employees Local Union No. 480 v. Bowling Green Express, Inc.,* 707 F.2d 254, 256 (6th Cir.1983).

10. The Court observes that this interpretation is supported by the language of Article 5, § 1, as well as the entire agreement taken as a whole. The first sentence of Article 5, § 1 begins, "The Union and the Employer agree...." The second sentence of that section begins, "The parties further agree...." Clearly it was the intent of the drafters of the collective bargaining agreement that "parties" in the second sentence refer back to "The Union and the Employer" in the first sentence. This contextual juxtaposition is repeated throughout the agreement.

decision of the Union and the Company.[11] In other words, a decision is final and binding when the Union and Company agree on the appropriate resolution of the grievance.

This is the only sensible interpretation of the Article. Were a decision simply appealable at the will of the grievant, a union would lose control of the grievance process and effectively transfer its power of representation to the individual union member and the courts. As it is likely that every unsuccessful grievant would appeal an adverse decision, the grievance procedure would become unwieldy:

> If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation.

*Vaca*, 87 S.Ct. at 917. Congress clearly intended to obviate this confusion by instituting a collective system in which the union processes the grievances of all employees. Under this system, the interests of the individual are subordinated to the welfare of the group.[12] Therefore, in the context of a grievance procedure, the individual employee must accept the good faith resolution of his grievance by the Union.

The Court concludes, as a matter of law, that Article 5, § 1 does not mandate automatic appeal of an employee grievance to a higher stage. Rather, the decision whether to pursue a grievance rests within the discretion of the Union so long as the Union is not acting in bad faith or arbitrarily. Therefore, the Union was not necessarily acting arbitrarily when it decided the Plaintiff's grievance at the local level and failed to appeal the Company's decision to the joint committee level.

#### 2. Arbitrary and Capricious Representation

■ Plaintiff next contends that even if the decision to appeal is vested in the discretion of the Union, the Union here acted arbitrarily in failing to appeal from the local to the joint committee level. Plaintiff claims that the Union knew or should have known that Plaintiff's honest omission was not just cause under the collective bargaining agreement. Knowing this, yet still failing to appeal the grievance to the state committee, says Plaintiff, was an arbitrary act.

Plaintiff's reasoning fails under closer scrutiny. It is unclear from the record whether providing false answers on an employment application constitutes just cause for termination under the collective bargaining agreement. As noted by the Sixth Circuit, this is a mixed question of law and fact for the trier of fact. Thus, Plaintiff's underlying assumption that providing false answers is not just cause is not necessarily correct. If erroneous—that is, if providing false answers *is* just cause for dismissal—the Union's actions were clearly rational. It reasonably assumed that the Company had a strong position and attempted to resolve the problem so as not to jeopardize the Plaintiff's future employment prospects.

■ However, even if providing false information is *not* just cause for dismissal, the Union did not breach its duty. Whether the dismissal was for just cause goes to the *Company's* liability, not the Union's. To determine whether the Union breached its duty, the Court must examine the rationality of the decision from the perspective of the point at which it was made, not

---

**11.** At oral argument, Plaintiff's counsel argued that there was never a "decision" in this case because there is no record of a settlement between the parties. Apparently, Plaintiff believes that to be a decision, the parties' resolution of the matter need be formally codified. The Court rejects this overly literal interpretation. The "decision" was that Plaintiff would be given the option to take a voluntary quit instead of a discharge. Whether this decision was codified is irrelevant for purposes of Article 5.

**12.** "The collective bargaining system as encouraged by Congress and administered by the NLRB of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit." *Vaca,* 87 S.Ct. at 912.

its legal foundation. An erroneous interpretation of the collective bargaining agreement by the Union would not be irrational so long as it was made in good faith and with good reason. As noted by the Sixth Circuit in *Poole v. Budd Co.*, 706 F.2d 181 (6th Cir.1983), union representatives are not held to the standards of attorneys:

> Mere negligent misunderstanding of a legal standard, such as that alleged in this case, does not constitute the arbitrariness or reckless disregard required to establish a breach to the duty of fair representation.

*Id.* at 185 (footnote omitted).

The circumstances in *Poole* are similar to those in the instant case. Poole was fired by his foreman when he refused to perform his assembly line job without his partner. His union representative commenced the prescribed grievance procedure claiming that the job that Poole refused to perform was a two person job and was unsafe when done alone. The union took the grievance through several stages of the grievance process but decided not to submit it to arbitration. It based its decision on the fact that: (1) it was unlikely that it could show a practice of using two people on Poole's job function; (2) the safety argument was without solid support; and (3) Poole had a poor disciplinary record. *Id.* at 184. Poole countered that "the union violated its duty of fair representation by arbitrarily misreading and negligently communicating (among union representatives) information concerning the job and the dangers associated with it when done as a one-worker operation." He also claimed that the Union misunderstood and misapplied the legal standards relating to the burden of proof on his claim. *Id.*

■ On appeal from the District Court's grant of summary judgment to the union, the Sixth Circuit found that the union had diligently pursued Poole's complaint and had a rational basis for failing to press on with the grievance. Even if the union had made an error of judgment, said the court, this would have risen only to the level of negligence and would not have been actionable:

> Whether the union's judgment was flawed or not, it is clear that it fairly and in good faith undertook to represent Mr. Poole with Budd and worked diligently toward gaining his reinstatement. The grievance process is not expected to be error free and the courts should hesitate to interfere with legitimate internal union decisions which fairly evaluate whether a claim warrants resort to the arbitral machinery.

*Id.* Thus, so long as a union acts upon a rational basis, it may, after a diligent and good faith effort to resolve a dispute between a member and the Company, make the decision to forego further proceedings on any given matter.

■ However, the Sixth Circuit has held that an act of recklessness or gross negligence on the part of the Union will not spare it liability for breach of its duty of fair representation. Ignorance of contract provisions may constitute gross negligence. In *Williams v. Teamsters Local Union*, 625 F.2d 138 (6th Cir.1980), the union, mistakenly believing that the grievant had been discharged when he had actually been on temporary leave, refused to represent him. The Sixth Circuit held that the failure to ascertain the grievant's correct status was "to act in a perfunctory and arbitrary manner." *Id.* at 139. Similarly, in *Milstead v. International Brotherhood of Teamsters*, 580 F.2d 232 (6th Cir.1978), *cert. denied*, 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981), the union breached its duty when it failed to notice the absence of a particularly relevant clause in a contract; this failure resulted in the employee's dismissal. *Id.* at 234.

The instant case is readily distinguishable from *Williams* and *Milstead*. The Union did not fail to observe relevant language in the contract. Rather, it was arguably guilty of failing to understand the difference between omission of fact and outright dishonesty as they apply to a just cause dismissal under the contract. Had the Union appealed the unfavorable decision and effectively made this argument at

the state or joint committee level, it may have been successful.[13] Yet this failure to perceive a potentially strong argument clearly does not rise to the level of gross negligence or recklessness, as unfortunate as the results of such failure might be.[14]

The instant case is likewise distinguishable from those cases in which the Union representation was so perfunctory as to be considered more serious than mere negligence. *United Transp. Union, Local 74 v. Consolidated Rail Corp.*, 881 F.2d 282, 289–90 (6th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 248, 112 L.Ed.2d 206 (1990) (union hindered employees' efforts by delaying action and failing to compile proper data); *Farmer v. ARA Services, Inc.,* 660 F.2d 1096, 1101–02 (6th Cir.1981) (union, without reason, failed to pursue employees' grievances). The record reveals that the Union engaged in a good faith effort to resolve the grievance, and tried to settle when it believed that further negotiation was futile and that the better course of action would be to obtain a voluntary quit rather than a discharge for falsification. Deposition testimony indicates that after learning of the grievance, Cooper attempted to resolve the issue with the Company's labor relations manager. When this failed, he set up a local level meeting between Company and Union representatives. In preparation for this meeting, he attempted to contact the individual who was arrested with the Plaintiff. This failed because that individual was worried that the arrest would come to the attention of his employer. Cooper also requested and received relevant documents from the Plaintiff and the Company. Finally, at the local level meeting, he presented the Plaintiff's case, arguing that the Plaintiff had made an honest mistake, a simple omission. Only when Cooper realized that the Company would not capitulate did he propose that the Company permit Plaintiff voluntarily to resign.

As further support for the claim that the Union acted arbitrarily, the Plaintiff argues that, contrary to the Union's position, no past practice supported its decision not to appeal Plaintiff's grievance. According to the Plaintiff, the Union had consistently taken similar cases from the local level to the joint committee level when the employee elected to appeal. At deposition, Cooper admitted that, although he had settled many cases in which the employee admitted to wrongdoing and chose not to appeal, he could not recall a prior case like Plaintiff's in which the Union did not appeal:

> MR. MILLER: ... She wants cases where the member said that, no I will not voluntarily resign and I want to take the appeal.
>
> A: Oh no, then I, no that's very few, humph.
>
> Q: [by MS. HARVEY]: Are there any?
>
> A: If it's one or two through my whole time, I think it's rare. Oh I understand

---

**13.** The Court is not required to postulate the future result of the grievance process had it not been arrested. As noted by the Sixth Circuit in *Anderson v. Ideal Basic Industries,* 804 F.2d 950 (6th Cir.1986):

> We make no judgment as to whether in the event the Local members had exhausted their internal remedies the agreement would have provided for termination benefits in this situation. We conclude simply that it was reasonable for the Union negotiators to believe that members of the Local were not entitled to benefits.

*Id.* at 953.

**14.** The Court notes that the District Court reviewing the collective bargaining agreement issue in the first instance took the same view as the Union. Both assumed that falsification, with or without the intent to deceive, was a ground for termination. Thus, it is difficult for

this Court to state that the Union committed a grossly negligent act in failing to perceive the distinction between dishonesty and unintentional falsification.

More importantly, the general state of contract law arguably supports the Union's interpretation of the matter. The Restatement of Contracts states that when a party's assent to a contract is based on a material misrepresentation, the contract is voidable by the recipient *even if the misrepresentation was not fraudulent. See* Restatement (Second) of Contracts § 164 cmt. b (1979). A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent. *See also Ott v. Midland–Ross Corp.,* 600 F.2d 24, 32 (6th Cir. 1979) ("The law generally recognizes that misrepresentation in the procurement of a contract renders the agreement voidable by one induced thereby, irrespective of the culpability of the person making the misrepresentation").

what you're saying now. Yeah, okay. No, that's many, a lot of people choose to resign. That's a lot of 'em. In other words, for sum, I can't recall that. Naw.

Q: You don't recall any such cases?

A: No.

When the Union subsequently checked its files to determine the substance of its past cases, it was able to find only instances in which either the grievance was dropped upon a voluntary quit by the employee or the grievance was clearly not meritorious.

A similar issue was recently addressed by the Sixth Circuit in an unpublished opinion, *Baker v. General Mills, Inc.*, No. 90–3036, 918 F.2d 178 (table), full text available at 1990 WL 177205, 1990 U.S.App. LEXIS 20142 (6th Cir. Nov. 14, 1990) (per curiam). In that case, the union failed to press an employee's grievance on the ground that past practice supported the company's position rendering arbitration futile. *Id.* 1990 WL 177205 at *1, 1990 U.S. App. LEXIS 20142 at *2. The grievant sued the union claiming that its interpretation of past practice was erroneous. The court, without ruling on the question of past practice, affirmed the lower court's decision to grant summary judgment. The court explained that, even if mistaken, the union's decision was made in good faith and was not arbitrary:

> If the unions negligently or mistakenly determined that there was a past practice regarding bumping upward, this alone is not sufficient in and of itself to show that their determination was arbitrary.... We realize that the lack of a past practice may create an inference that any reliance upon a "non-existent" past practice was arbitrary. In our view, however, given the particular circumstances of this case, we think the appropriate question is whether the unions' determination that there was a past practice of prohibiting bumping upward was reasonable, in good faith and thus not arbitrary.

*Id.* 1990 WL 177205 at *3, 1990 U.S.App. LEXIS 20142 at *9.

The particular circumstances of this case likewise support the reasonableness of the Union's decision. It is clear from the record that, *at the time he made his decision not to pursue Plaintiff's grievance*, Cooper believed that Plaintiff's case was similar to prior unsuccessful efforts to reinstate discharged employees:

> I've had cases like that in the past, and not one of them locally or at the state panel was ever won. That's from my involvement from '79 up till now. I can't speak prior to that, but I can tell you from my involvement I have never seen one won, and I echoed this to Leonard.

Again, the question is not whether Cooper was *correct* to believe this, but rather whether this belief was so irrational as to be arbitrary. The Court holds that it was not.

## CONCLUSION

Perhaps the Union's decision not to pursue the Plaintiff's adverse decision was unfortunate. Plaintiff may have been discharged for an honest omission of fact as opposed to dishonesty. Perhaps the Union could have more aggressively pursued a grievance that it thought valid. However, these questions do not frame the legal tests for Plaintiff's claims in the instant case. The Supreme Court and Sixth Circuit law on this issue bestows on a union a "wide range of reasonableness" so long as its decisions are made in good faith. Nothing in the record indicates that the Union, even if mistaken, acted with bad faith or in a perfunctory manner.

As the Union has met its initial burden of showing that there is no genuine issue of material fact as to its alleged breach of the duty of fair representation, and as the Plaintiff has failed to provide evidence that the Union acted arbitrarily, the Court believes that the Union's motion for summary judgment is well-taken and, accordingly, will be granted.

NOW, THEREFORE;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Defendants' Motion for Summary Judgment is GRANTED;

IT IS FURTHER ORDERED that the Plaintiff's Complaint is DISMISSED WITH PREJUDICE.