**Leonard LINTON, Plaintiff–Appellant,**

v.

**UNITED PARCEL SERVICE; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 243, Defendants–Appellees.**

No. 92–1058.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 11, 1992.

Decided Feb. 8, 1994.

Barbara M. Harvey (argued and briefed), Detroit, MI, for Leonard K. Linton.

Mark T. Nelson, Butzel, Long, Gust, Klein & Van Zile, Detroit, MI, for United Parcel Service.

Gerry M. Miller, Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, Francis J. Kortsch (argued and briefed), Milwaukee, WI, for Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 243.

Before: KENNEDY and BATCHELDER, Circuit Judges; and ENGEL, Senior Circuit Judge.

BATCHELDER, Circuit Judge.

Plaintiff-appellant Leonard Linton, a former employee of defendant-appellee United Parcel Service (UPS), appeals the district court's granting of summary judgment on his claim that defendant-appellee International Brotherhood of Teamsters, Local 243 ("the union"), breached its duty of fair representation, 779 F.Supp. 897. Because we hold that a triable issue of fact exists as to whether the union breached its duty of fair representation by refusing to appeal Linton's grievance over his discharge to the state grievance committee, we find that summary judgment was not appropriate and that the decision of the district court must be REVERSED.

**I.**

In 1976, plaintiff Leonard Linton was a 17-year-old high school student in Dearborn Heights. Linton and a companion were arrested by Dearborn police in a field near the high school. Police searched them and found a marijuana cigarette on Linton's companion. Linton claims that he was not aware that his companion had the cigarette. Linton was taken before a state court, where he pled guilty to "loitering" in the field. He was released on his parents' payment of a $50 fine. Linton claims that he was not told that he was charged with a "crime," that he was not offered the assistance of counsel, and that he did not know that pleading guilty to loitering would give him a criminal record. In fact, Linton had pled guilty under an ordinance entitled "loitering where marijuana was kept," which was declared unconstitutional one year after Linton's guilty plea because it permitted conviction without evidence of criminal intent. *See People v. Smith,* 75 Mich.App. 64, 254 N.W.2d 654 (1977).

Right after high school, Linton filled out an application for employment with UPS. On that application, Linton was asked: "Have you ever been convicted of a crime?" to which he responded "No." Linton was hired by UPS as a part-time loader-unloader, and he continued to work there from 1979 to 1988. UPS admits that during these nine years on the job, Linton was quiet and hardworking.

In September of 1988, Linton applied for a full-time position as a next-day special air driver. UPS required a second employment application for this position. This application also asked whether Linton had ever been convicted of crime, and Linton again responded "No." UPS conducted a criminal history check in connection with Linton's application for full-time employment. On October 17, 1988, Linton was discharged on the basis of a report from the state police computer system stating that Linton had committed a "violation of controlled substance article." The discharge letter claimed that "the employment applications submitted to

UPS on August 7, 1979, and on September 20, 1988, were falsified." The discharge was pursuant to Article 17 of the UPS-union Collective Bargaining Agreement (CBA), which sets out the grounds for discharge or suspension:

> The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of a complaint against such employee to the employee in writing and a copy of the same to the Union, except no warning notice need be given to any employee before he/she is discharged if the cause of such discharge is:
>
> (a) dishonesty;
>
> (b) drinking of, or under the influence of alcoholic beverage or narcotics during the workday;
>
> (c) personal possession or use of drugs, marijuana or L.S.D. during the workday;
>
> (d) gross negligence, resulting in serious accident, as defined and required reportable under D.O.T. regulations;
>
> (e) the carrying of unauthorized passengers while on the job;
>
> (f) failure to report an accident;
>
> (g) an avoidable runaway accident; or,
>
> (h) failure to turn in all monies collected on that day.
>
> It is understood that there are other offenses of extreme seriousness that an employee will be discharged for without a warning letter.
>
> With the above exceptions, no employee shall be suspended or discharged without a local-level hearing or at least one (1) warning letter....

Thus, UPS charged that Linton's false/incorrect statement on his applications constituted "dishonesty" under subsection (a) or an "other offense of extreme seriousness." Linton, however, claimed that he had completed both forms truthfully. And, UPS's records reflect that Linton may not have been aware that he had a criminal record.[1]

The collective bargaining agreement also sets out the contractual grievance procedure, which employs a system of joint employer-union committees. The procedure calls initially for informal efforts at the shop level to resolve the dispute. After that, the complaining employee must file a written grievance, and the union's business agent must try to settle the dispute. If the business agent cannot settle the dispute, it is referred to a local-level hearing. The contract states "[i]f the parties fail to reach a decision or agree upon a settlement in the matter, it shall be submitted to the state committee or UPS Joint Area Committee, whichever is applicable within fifteen (15) days." CBA, Article 5, § 1(c). Any cases not resolved at the state level "shall then be submitted to the UPS Joint Area Committee within fifteen (15) days." *Id.*

Pursuant to this collective bargaining agreement, Linton filed a grievance with the union. The union's business agent, Leon Cooper, met with Linton and requested that Linton bring him documents on the arrest. Cooper also talked to UPS officials and called a potential witness. Cooper told Linton that the union would do all it could to get his job back. At the local level meeting, Cooper made a demand for reinstatement, and explained that Linton had only made an honest mistake because he did not know he had falsified the applications. When UPS rejected the reinstatement demand, Cooper urged Linton to accept a voluntary quit in lieu of a discharge. Initially, Linton indicated to Cooper that he would take the voluntary quit deal. However, on the advice of his union steward, Linton refused and stated that he wanted to take the grievance to the state committee. The local level meeting then recessed.

Linton telephoned Cooper to ask him to use the contractual appeal process, but Cooper responded that there was nothing else he could do. On October 28, 1988, Linton mailed Cooper a written request for an appeal. Cooper wrote back on November 3, 1988:

> Per your request at the hearing the Union asked the Company to allow you to resign

---

1. In addition, the Michigan Employment Security Commission, after a hearing before a referee that was not appealed, found that Linton gave credible testimony that he completed the application to the best of his knowledge and that he did not intend to deceive the company.

for personal reasons, which the Company agreed with. You later withdrew your request.

Therefore, no contractual violation exists and your grievance was denied. This decision is final and binding.

Again on November 10, 1988, Cooper reiterated that "[w]e shall consider your grievance dated above as denied and closed."

Linton filed a complaint in state court, claiming unjust discharge and breach of the union's duty of fair representation. On May 19, 1989, defendants removed the case to federal court based on the federal question under the Labor Management Relations Act, 29 U.S.C. § 185 [section 301]. Defendants moved for summary judgment on the grounds that plaintiff failed to present a triable issue. On June 19, 1990, then District Court Judge Suhrheinrich granted summary judgment for both defendants on the ground that Linton had no cause of action against the employer for breach of the collective bargaining agreement. Linton appealed. On May 24, 1991, a panel of this Court reversed the district court's granting of summary judgment because genuine issues of fact existed as to the claim that the company breached the collective bargaining agreement. Defendants then moved for summary judgment on the duty of fair representation element. On December 23, 1991, the district court, now with Judge Rosen presiding, again granted summary judgment for both defendants, this time on the ground that Linton failed to state a triable issue of whether the union breached its duty of fair representation. Linton appeals again.

## II.

We first must address plaintiff-appellant Linton's argument that the previous opinion of a panel of this Court precluded the district court from granting summary judgment for defendants. We find this argument without merit.

In the first district court opinion, Judge Suhrheinrich first noted that to state a section 301 violation, a plaintiff must show both that the union breached its duty of fair representation and that the company breached

the CBA. He then concluded that Linton had failed to show that the company had breached the CBA because

Linton's responses in the employment application forms were false and the Company therefore had "just cause" for terminating him since the terms of the employment application form unequivocally stated that misrepresentation or omission of fact constituted grounds for termination. Thus, there is no genuine issue of material fact as to the employer's breach of the collective bargaining claim.

Thus, the district court held that because the response on the application was false and because the application forms state that misrepresentations are grounds for termination, the employer had "just cause" to fire Linton and had not breached the CBA. The district court then concluded that because Linton had not shown a breach of the collective bargaining agreement, the section 301 claim failed and the court did not need to address whether the union breached the duty of fair representation.

A panel of this Court reversed and remanded the case because the district court had failed to indicate whether the false statement would constitute just cause for termination under the CBA, and instead had justified the termination for the false statement on the grounds that the application permitted such terminations. The panel held that summary judgment was not appropriate on the breach of the CBA issue because the district court had failed to find that UPS did not breach the CBA as a matter of law, and that a false answer in an application did not automatically constitute "dishonesty" because dishonesty includes a component of intent to deceive; without a finding of intent, providing the false information was not "just cause" for termination under the CBA as a matter of law. The panel also addressed the second prong of the cause of action—the duty of fair representation—but declined to decide whether the union breached its duty of fair representation, stating:

The collective bargaining agreement provides a method of determining just cause, which is a mixed question of law and fact. The District Court did not rule on the

question of whether plaintiff was denied that process by reason of the union's alleged breach of the duty of fair representation. Although the union urges us to rule on its motion for summary judgment that there was no such breach, we decline to do so in the first instance. The issues are not properly decided on summary judgment.

On remand, the district court, now with Judge Rosen presiding, again granted summary judgment for defendants. The district court stated that although the Sixth Circuit panel had held that an issue of fact remains on the breach of the CBA issue, the duty of fair representation issue was ripe for review by the district court. The district court regarded the Sixth Circuit panel's final substantive sentence—"The issues are not properly decided on summary judgment"—as cryptic because it could imply that both the CBA and the duty of fair representation issues could not be properly decided on summary judgment. The district court concluded, however, that the panel meant only that the CBA issue was not proper for summary judgment because of issues of fact, and that the duty of fair representation issue was not properly before the court on the appeal of the summary judgment because the district court had not addressed this issue. The district court then addressed the merits of the claim of a breach of the duty of fair representation and found summary judgment to be appropriate as to the claim.

We find that Judge Rosen was correct in his belief that the Sixth Circuit panel decision precluded summary judgment on the issue of the breach of the CBA because there remain questions of fact and law as to whether Linton had an intent to deceive and whether UPS had "just cause" to terminate. Thus, this issue must go to trial if the duty of fair representation issue also goes to trial.

We also find that the district court was correct in believing that it was not precluded by the panel opinion from granting summary judgment on the claim of breach of the duty of fair representation. Although the panel's language is somewhat ambiguous, we conclude that the panel meant that summary judgment may be appropriate as to the duty of fair representation issue, but that it was not reviewable "in the first instance," *i.e.*, at the point of the prior appeal, because the district court had not addressed the issue at all. Therefore, Judge Rosen's district court opinion did not ignore the panel's rulings by addressing the duty of fair representation issue.

### III.

■ Having found that the district court was not precluded from addressing on summary judgment the duty of fair representation issue, we must now review Judge Rosen's ruling that the union did not breach that duty. Because we hold that a triable issue exists as to whether the union breached its duty of fair representation, we reverse the district court's granting of summary judgment.

■ A section 301 claim requires both a finding of a breach of a CBA by the employer and a breach of the duty of fair representation by the union. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990). Although a panel of this Court already found that summary judgment was not appropriate as to the claim of breach of the CBA, Linton nevertheless can withstand summary judgment only if he can show either that the union breached its duty of fair representation as a matter of law, or that there remain genuine issues of material fact as to whether the union breached that duty.

■ A union does not breach its duty of fair representation unless its conduct toward its members is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). As the Supreme Court held in *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991), "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Id.* at 67, 111 S.Ct. at 1130 (citation omitted). Any substantive review of a union's performance "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance

of their bargaining responsibilities." *Id.* at 78, 111 S.Ct. at 1135.

Specifically, the Supreme Court in *Vaca v. Sipes* held that "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Vaca,* 386 U.S. at 191, 87 S.Ct. at 917. And, a panel of this Court in *Poole v. Budd Co.,* 706 F.2d 181, 183 (6th Cir.1983), stated that a union acts arbitrarily only if "it handles a grievance in a 'perfunctory' manner, with caprice or without rational explanation." *Id.*

Addressing on remand the duty of fair representation, the district court held that Linton had no absolute right to have his grievance appealed to the state committee because the union and UPS were the "parties" to the contract and they had reached a final and binding decision in deciding to permit Linton to quit rather than to be fired. It then held that the union's failing to appeal the case to the state committee was not arbitrary because it was not outside the "wide range of reasonableness."

Linton argues that the union breached its duty of fair representation by failing to appeal his grievance to the joint area or state committee as required by the specific language of the CBA. Alternatively, Linton argues that the union acted arbitrarily in not appealing the discharge to the joint committee.

■ The construction of a CBA is a question of law, and thus we review that question *de novo.* *Teamsters Local 348 Health & Welfare Fund v. Kohn Beverage Co.,* 749 F.2d 315, 317–18 (6th Cir.1984), *cert. denied,* 471 U.S. 1017, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985). The CBA between the union and UPS states:

> A grievance is hereby jointly defined to be any controversy, complaint, misunderstanding, or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement or any Supplement, Rider, or Addendum hereto. Grievance procedures may be invoked only by authorized Union or Employer representatives.
>
> In the event of any grievance, complaint, or dispute on the part of any employee, it shall be handled in the following manner, and a decision reached at any stage shall be final and binding on both parties.
>
> The grievance shall be discussed with the employee's immediate supervisor or with the aggrieved employee, his/her shop steward and the immediate supervisor. If the grievance is not resolved within one (1) working day;
>
> (a) The employee shall report it to his/her shop steward in writing within five (5) working days. The steward shall attempt to adjust the matter with the supervisor within forty-eight (48) hours.
>
> (b) Failing to agree, the shop steward shall promptly report the matter to the Union which shall submit it in writing and attempt to adjust the same with the Employer within five (5) working days.
>
> (c) If the parties fail to reach a decision or agree upon a settlement in the matter, it shall be submitted to the state committee or UPS Joint Area Committee whichever is applicable within fifteen (15) days. Any cases not resolved at the state level shall then be submitted to the UPS Joint Area Committee within fifteen (15) days.

Article 5, § 1 of CBA.

■ Contrary to Linton's view, the district court was correct in finding that the only parties to the CBA are the union and UPS, not individual employees such as Linton. The CBA provides that UPS and the union "agree to be bound by the terms and conditions of this Agreement," and that "[g]rievance procedures may be invoked only by authorized Union or Employer representatives." The language that a decision is final and binding "on both parties" implies that only two parties—the union and UPS—have a say in how a grievance is handled. Thus, a decision by the union and UPS about how to handle a grievance is final and binding, even if the aggrieved employee disagrees. As the Supreme Court noted in *Vaca,*

> If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and

returning the individual grievant to the vagaries of independent and unsystematic negotiation.

*Vaca,* 386 U.S. at 191, 87 S.Ct. at 917.

We decline to hold, as Linton asks us to do, that the district court erred in finding as a matter of law that Article 5, § 1 of the CBA does not mandate an automatic appeal of an unresolved employee grievance to a higher stage.[2] It is true, as Linton points out, that the CBA states that the grievance "shall" be submitted to a higher level "[i]f the parties fail to reach a decision or agree upon a settlement in the matter." Linton is also correct that the parties did not "reach a decision or agree upon a settlement in the matter." The union does not argue in its brief that the grievance was settled when the union proposed the deal to Linton that would have permitted him to quit voluntarily rather than be discharged. And, at oral argument, the union explicitly stated that the grievance was not settled—either by Linton's acceptance (followed by his rejection) of the proposal or by any other kind of settlement between the two parties.[3] The union does argue that the parties to the collective bargaining agreement, UPS and the union, "reach[ed] a decision" in the matter. However, it is clear from the record and the arguments that the union did not arrive at a decision with the company concluding this grievance. Rather, UPS unilaterally decided that it would not reinstate Linton, and the union simply gave up.

But we do not believe that this matter can be correctly disposed of only by holding that the language of the contract mandates that the union has no choice but to appeal the grievance if the parties have not settled it or reached a decision on the matter. Even if the "shall" language is not mandatory, the union is not relieved of the duty to fairly represent Mr. Linton. While *Vaca v. Sipes* gives unions broad discretion in deciding how best to represent the interests of their members, unions are not free to make such decisions in an arbitrary or capricious manner. Given the facts of this case, we find that there is a genuine issue as to whether the union acted arbitrarily, and therefore, that it breached its duty of fair representation as a matter of law.

Several aspects of Linton's grievance, and the manner in which it was processed, could lead to the conclusions that the union's refusal to appeal the company's denial was arbitrary. At oral argument, the union's counsel contended that the "decision" reached in this case was Cooper's decision not to advance the grievance because the company's position was intractable and an appeal therefore would have been futile, and that it was enough that the union representative had reached a unilateral decision not to advance the grievance because it would be futile to do so. However, although the company's position may have appeared somewhat intractable, that position was, as this court pointed out in *Linton v. United Parcel Service,* No. 90-1915, 1991 WL 86277, 1991 U.S.App. LEXIS 11494 (6th Cir. May 24, 1991) (*Linton I*), based on an overly narrow interpretation of the collective bargaining agreement.

Further, the record contains several indications that the union recognized the merit of Linton's claim. Linton alleges, for example, and the evidence suggests, that his shop steward advised him to refuse the company's offer of resignation, because the steward believed that Linton had a strong case. Cooper's deposition also points out that the union did not pursue the grievance because, although perhaps meritorious, Cooper did not believe that the union would win the case. Cooper acknowledged that falsification does not mean "dishonesty" under the CBA and that the discharge was not justified. Cooper stated that he argued at the local-level hearing that Linton had only made "an honest

**2.** Judge Batchelder, however, would so hold. *See infra* note 6.

**3.** The district court, however, did find that the grievance had been settled by the deal proposed to Linton permitting a voluntary quit. The district court erred in this determination because the grievance clearly was not settled by the parties. After Linton rejected the proposal, the union told Linton that his grievance had been "denied," not settled. In addition, a settlement was never put in writing, and Linton's employment records were never revised to alter his discharge into a voluntary quit.

mistake," that he thought his record was clean, and that "[h]e didn't really, you know, blatantly falsify his application." Despite this recognition of the grievance's merit, Cooper testified that he did not appeal the grievance because whenever a falsification issue arose as to an employee, "it's deemed dishonesty and the person's discharged," and the employee never won at the local or state level. Also illustrative is the remark that Cooper made to Linton concerning the result of the local negotiating session: "Life's a bitch; then you die. I'm sorry it happened, young man, but there's nothing I can do." In fact, there was something that Cooper could have done, and his statement belies any contention that the union "settled" Linton's grievance or made a decision that the grievance was not worth pursuing due to its lack of merit. Cooper's testimony clearly indicates that Cooper refused to pursue the grievance, not because it lacked merit, but only because of the state committee's past practice of denying falsification grievances.

This case is thus distinguishable from cases such as *Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1212 (6th Cir.1981) (*Ruzicka II*), where the union's failure to pursue a grievance was due to mere negligence, rather than the "type of arbitrariness which reflects reckless disregard for the rights of the individual employee." While it is true that ordinarily negligence or mistaken judgment by the union in failing to pursue a grievance is not actionable under section 301, *Poole v. Budd Co.*, 706 F.2d at 185,[4] recklessness or gross negligence by the union can constitute a breach of the duty of fair representation. In *Ruzicka v. General Motors*

**4.** The *Poole* Court noted:
Whether the union's judgment was flawed or not, it is clear that it fairly and in good faith undertook to represent Mr. Poole with Budd and worked diligently toward gaining his reinstatement. The grievance process is not expected to be error free and the courts should hesitate to interfere with legitimate internal union decisions which fairly evaluate whether a claim warrants resort to the arbitral machinery.
706 F.2d at 184.

**5.** Even if the company had a strict policy concerning employee honesty, it still had to have been difficult to lump Linton in with other applicants who had been rejected on this account.

*Corp.*, 523 F.2d 306, 310 (6th Cir.1975) (*Ruzicka I*) a panel of this court said, "[w]hen a union makes no decision as to the merit of an individual's grievance but merely allows it to expire by negligently failing to take a basic and required step toward resolving it, the union has acted arbitrarily and is liable for a breach of its duty of fair representation." In Linton's case, the union acknowledged the merit of the grievance but made an affirmative decision not to pursue it because in the past, it had not succeeded on these appeals.

The case is also distinguishable from cases such as *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir.1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976), where the union evaluated the merits of the grievance and concluded that it was not worth pursuing. Here, the union's decision not to pursue the grievance was based, not on an evaluation of its merits, but on its decision that the company's position, right or wrong, was intractable.[5] The union's duty fairly to represent its members cannot be discharged so easily.

Finally, and perhaps most importantly, there is evidence that the union had never refused to prosecute an appeal on behalf of an employee in Linton's position. Cooper was asked at his deposition whether he had ever refused to bring an appeal on behalf of an employee who, being informed of the odds against prevailing on appeal, nonetheless insisted on trying. After hearing the question rephrased several times, and after doggedly citing numerous examples of cases where employees grudgingly accepted offers of resignation, Cooper finally responded to the union's own counsel's reformulation of the question:

First, he was not a new hire but had been employed for many years and satisfactorily so. He thus commanded a certain standing and reputation within the company on which he should have been able to rely. Second, he was an ordained minister. Finally, although he did not know it when he had pled guilty to the offense many years earlier, the ordinance which he admitted violating was shortly thereafter struck down as being unconstitutional. A union vigorously pursuing its obligation to represent Linton fairly, could easily have taken the position that these circumstances were so unique that the company would not necessarily have to abandon its principles in order to grant Linton relief.

[BY UNION'S COUNSEL]

Q: She wants cases where the member said that, "No, I will not voluntarily resign and I want you to take the appeal."

A: Oh no, then I, no that's very few, humph.

[BY LINTON'S COUNSEL]

Q: Are there any?

A: If it's one or two through my whole time, I think it's rare. Oh I understand what you're saying now. Yeah, okay. No, that's many, a lot of people choose to resign. That's a lot of 'em. In other words, for sum, I can't recall that. Naw.

Q: You don't recall any such cases?

A: No.

This sentiment was echoed by Linton's shop steward, who stated in an affidavit as follows:

I know of no discharge case that was not settled at a local level hearing which did not go to the state panel. Unsettled discharge cases have always been taken to the state panel, to the best of my knowledge. I know of no discharge cases, except Leonard Linton's, that were abandoned by the union after they could not be settled at or before the local level hearing.

This evidence indicates that the union's failure to process Linton's claim represented an unprecedented departure from past practice. Such a failure to accord a member the same treatment given to all other members might very well constitute a breach of the union's duty of fair representation, thus creating a jury question on this issue. *See Bennett v. Local Union No. 66, Glass Workers Int'l Union*, 958 F.2d 1429, 1436–39 (7th Cir.1992) (disparate treatment of employee breached duty of fair representation); *Bond v. Local Union 823, International Brotherhood of Teamsters*, 521 F.2d 5, 9 (8th Cir.1975) (proper to submit claim that union breached its duty of fair representation to jury).[6]

## IV.

Because we find that Linton presented a triable issue on whether the union breached

---

6. Judge Batchelder would hold that the language of the collective bargaining agreement mandates that Linton's grievance be pursued by the union. While recognizing that *Vaca v. Sipes* holds that the settlement machinery provided by collective bargaining agreements would be substantially undermined if individual employees could compel arbitration of meritless grievances, and that an individual employee does not have an *"absolute right* to have his grievance taken to arbitration *regardless of the provisions of the applicable collective bargaining agreement," Vaca*, 386 U.S. at 191, 87 S.Ct. at 917 (emphasis added), Judge Batchelder does not believe that *Vaca*'s language means that an employee has *no* right to have his meritorious grievance pursued through the grievance process. What *Vaca* says is that no *absolute* right exists *in the face of provisions to the contrary in the contract,* that the arbitration which an individual employee cannot compel is the arbitration of *meritless* grievances, and that nothing in *Vaca* implies that the employer and the union cannot contract to give the employee *some* right to require the union to do what it agreed to do by becoming the exclusive bargaining representative of the employees. Indeed, as *Vaca* explicitly recognized, the whole reason for permitting an action for the breach of the duty of fair representation is that the collective bargaining system subordinates the rights of individual employees to the interests of the employees as a group, depriving the individual employee of the right to defend his own interests as against the employer in exchange for his being represented by his union. *Id.* at 182, 87 S.Ct. at 912.

Judge Batchelder, therefore, would find that the specific language of this contract, while it does not require that the union process all grievances regardless of their merit, or permit the employee to compel the union to process his particular grievance, does require the union to *either* (1) come to a decision with UPS on the grievance or settle the grievance with UPS, or (2) take the grievance to the next level. The language of the contract gives the union the discretion to decide which of these things to do; it permits the union and UPS to reach the decision that the grievance has no merit and the employer's action is correct, or to settle the matter by compromise; in either event the employee is clearly bound. The language of the contract does not permit the union simply to do nothing. But that is precisely what the union did here. This was not a meritless grievance which Linton sought to have pursued through the grievance process. This was a grievance whose merit the union recognized, which was neither settled nor decided, but abandoned.

The union is the exclusive representative of the employees who, by virtue of the unionization of the business, have no legal right to represent themselves in disputes with UPS. In return for surrendering those rights, the employees are entitled to have the union do what it agreed to do on their behalf in the CBA. The union's failure to do what it is required to do by the language of the contract is a breach of its duty of fair representation.

its duty of fair representation, we hold that the district court erred in granting summary judgment for defendants. Therefore, in accordance with the previous ruling of a panel of this Court finding that there are genuine issues of fact as to the breach of the collective bargaining agreement, we REVERSE and REMAND this case to the district court for trial on the merits of Linton's section 301 claim.

KENNEDY, Circuit Judge, dissenting in part.

I am unable to agree with the panel that there is evidence that the union breached its duty of fair representation in this case. It fully presented plaintiff's case at the local level. The business agent, Leon Cooper, testified that he believed that the employer was within its rights in discharging plaintiff but tried to present a sympathetic case and persuade the employer not to discharge plaintiff for equitable reasons. He investigated the circumstances of plaintiff's conviction and attempted to get the other young person who had been arrested with plaintiff to come and testify about those circumstances to show how minor the crime was and that plaintiff was merely present where marijuana was being used, not using it. The proposed witness refused since he had not told his own employer of his conviction. After it was clear the company would deny the grievance, the business agent persuaded the company to permit plaintiff to resign in lieu of being discharged. Plaintiff initially agreed to that resolution but later changed his mind. The panel attaches importance to a statement made by the business agent that he was sorry about the firing but there was nothing he could do. There was nothing further he could do to change the employer's mind; he had fully presented the equities of plaintiff's position. While it is true that he could have filed an appeal, the reasons he did not do so are fully explained in his testimony. The business agent testified that he did not take an appeal since he saw no likelihood of securing plaintiff's reinstatement in view of his admission that he had given a false answer on his employment and promotion applica-

tions. There was nothing unreasonable or arbitrary in that conclusion. That on appeal this Court made a distinction between dishonesty and a false answer does not mean that a business agent is required to make that kind of sophisticated analysis—one not even made by the district judge. The panel finds that Cooper's statement belies any contention that the union made a decision that the grievance was not worth pursuing due to its lack of merit. I am at a loss to see how that follows. The statement was made after the business agent told plaintiff there would be no purpose in appealing. He also had said, and continues to say, that the situation, namely firing plaintiff, was unfair; however, he always considered it as within the employer's rights. Cooper testified that he considered the matter and reached the conclusion that the union could not prevail.

The panel also relies on the fact that plaintiff's shop steward, Robert Naslanic,[1] advised him to refuse the offer of resignation because he had a strong case. Plaintiff is not implying that that advice breached the duty of fair representation. The steward's opinion of the strength of plaintiff's grievance was simply that—his opinion. There is no indication that he knew of a similar grievance concerning a termination for making a false statement in an application for employment that had been won. There is no evidence that the steward's opinion was shared by the business agent, the decision-maker. Indeed, the business agent testified that he knew of no grievance that had been successful on appeal where an employee had been terminated for false information on an employment application or making other false statements. The names and files of two or three such unsuccessful grievance appeals were provided to counsel for plaintiff. There is nothing in the record to dispute the business agent's statement. Moreover, he testified that he had resolved a number of false statement cases by persuading the employee to resign so he would not be discharged.

As the panel pointed out, the standard of arbitrariness in a duty of fair representation case is a high one. In *Airline Pilots Association, International v. O'Neill,* 499 U.S. 65,

1. Naslanic had been a steward of part-time employees for approximately four years.

67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991), the Court held: "We further hold that a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is *so far outside a 'wide range of reasonableness' as to be irrational.*" (emphasis added) (citations omitted). There can be nothing irrational in the union's decision not to appeal. Nor is there any evidence that the union's treatment of plaintiff was discriminatory. Although the business agent was unable to identify any case where he had refused an appeal after an employee was discharged for dishonesty, he testified that usually the employee, if permitted to resign, would do so and there were no requests to take an appeal.

Because there is no evidence that the union breached its duty of fair representation, I would affirm.

I do not believe that the collective bargaining agreement imposed an absolute duty upon the union to take an appeal whenever there was a failure of the parties to resolve the grievance. I, therefore, disagree with the position taken in footnote 6 of the majority opinion.