86 F.3d 1156
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Carol ROBINSON, Plaintiff-Appellant,
v.
CENTRAL BRASS MANUFACTURING COMPANY, Defendant,
and
United Auto Workers' Local 1196, Defendant-Appellee.
 
 No. 95-3283.
 United States Court of Appeals, Sixth Circuit.
 May 22, 1996.
 Before: MILBURN and BOGGS, Circuit Judges; and QUIST, District Judge.*
 PER CURIAM.
 
 
 1
 This is the second appeal of this case, the prior appeal having been remanded to the district court for further consideration of plaintiff's claim against United Auto Workers' Local 1196 ("the Union"). Plaintiff Carol Robinson now appeals the district court's grant of summary judgment to defendant Union in this hybrid § 301 action under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, brought originally against Central Brass Manufacturing Company ("Central Brass" or "the Company") and the Union. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Carol Robinson was hired by Central Brass on October 23, 1986, as an hourly production worker. Robinson claims that the management of Central Brass did not like her. During her tenure there, Robinson was laid off twice while working at various positions in the company. She filed two workers' compensation claims while at Central Brass, and Robinson's union steward, Roosevelt Stowes, took the position that Central Brass thought those claims were meritless. Robinson also filed a prior action in court against Central Brass when acid leaked onto her car. On one occasion when eggs had been thrown on Robinson's car while at work, Central Brass attempted to discharge Robinson for leaving work to clean her car. She was ultimately discharged from Central Brass on October 24, 1989, for chronic absenteeism. Her attendance record was not exemplary. For instance, in 1988, Robinson missed 33 days of work.
 
 
 3
 Robinson was a member of Local 1196 of the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, which was the collective bargaining representative for the production and maintenance workers at Central Brass. The applicable collective bargaining agreement was in effect from April 20, 1987, to April 19, 1990. The agreement provided for a multiple-step grievance procedure, culminating with binding arbitration. The company was given the right to discharge for just cause and to discipline employees in several ways, depending on the seriousness of the offense. The company also had the right to promulgate work rules regarding employee behavior, and the union had the right to grieve those rules.
 
 
 4
 The attendance policy at Central Brass changed in the middle of Robinson's employment. In accord with the collective bargaining agreement, Central Brass established new rules regarding attendance which became effective on February 15, 1989. Unlike the previous policy, this new policy did not recognize excused absences. The new attendance policy was described in an employee memo:
 
 
 5
 Everyone will be given a fresh start with no action to be taken for prior absences, tardiness, etc. Prior "instances" merely provide an historical pattern of the employee's attendance record.... Under the new system, there is no such thing as an "excused" absence; each and every instance will be reviewed and evaluated. I therefore urge each of you to honestly tell your foreman the reason you were absent or late. As you know, under our prior system, a "doctor's excuse" was an excused absence. This no longer will be the case; each and every absence will be counted and evaluated, based on the circumstances....
 
 
 6
 In the first counseling session, ... the employee's recent attendance history leading to this session will be reviewed. The goal is to get the employee to come to work on time on a regular basis and to try and get to the cause of the problem and get it corrected.... If, after two or three counseling sessions the employee continues to be absent or tardy to an excessive degree, the Company will administer a final warning, which will also include the balance of the day off with pay [,] instead of disciplinary lay off. If, after receiving a final warning, the employee continues to be absent to an excessive degree, the employee will be terminated.
 
 
 7
 J.A. 67. The Union reserved the right to grieve the new attendance policy.
 
 
 8
 On May 3, 1989, Robinson was given an "informal" counseling session regarding her absenteeism. On both May 31, 1989, and August 2, 1989, Robinson was given a formal counseling session. On August 22, 1989, due to continued poor attendance, Robinson received her "decision day" final warning and was told to take the following day off with pay. Robinson was also warned that her attendance must improve in order for her to avoid termination.
 
 
 9
 Following Robinson's decision day, Robinson had perfect attendance for 13 days. However, on September 13, 1989, Robinson was six minutes late to work. On September 27, 1989, Robinson left work early, along with several co-workers, to attend the funeral of a co-worker. Robinson claims to have had permission, but Central Brass noted the absences of all employees not present that day, including Robinson. On October 5, 1989, Robinson became sick at work. Stowes confirms that he received permission for Robinson to leave work from the president of the company, Richard Chandler, but Chandler states that his permission did not mean that the absence would not be noted on Robinson's record. Robinson missed work the following day and produced a doctor's excuse upon her return to work.
 
 
 10
 On October 23, 1989, Robinson missed work in order to be in court. She returned to work on October 24, 1989, but was tardy, and produced a letter from her attorney explaining her absence. On that same day, prior to reading the letter, Central Brass terminated Robinson for unsatisfactory attendance since her decision day. Robinson had been absent or tardy 14.28% of the time since her decision day. This was an improvement from Robinson's prior absenteeism rate of 29.6% from March 7, 1989, to August 22, 1989.
 
 
 11
 With the assistance of the Union, Robinson filed Grievance Number 16-89 in protest of her discharge. Robinson believed that her improved rate of attendance should prevent her termination and that she should be entitled to reinstatement with back pay. The Union, through its chairman, Jim Wolske, investigated Robinson's situation. The Union claims that Robinson was uncooperative and did not provide it with documentation explaining her absences, such as doctors' excuses. Robinson claims that the Union did not like her and that it would not talk with her outside of a few brief occasions. Robinson, however, did feel that her union steward Roosevelt Stowes did everything he could to help her keep her job. Wolske's investigation of Robinson's grievance included reviewing her personnel file, verifying that Robinson was aware of the new attendance policy, and interviewing Robinson's supervisors to determine if she was ever given permission to leave work. Wolske's only interview with Stowes occurred on the day of Robinson's discharge. The Union pursued Robinson's grievance through all the possible steps short of arbitration. This included three meetings with Central Brass. At the third meeting, on November 1, 1989, the Union argued that Robinson's absenteeism rate had improved and that it would be better for company morale if she were reinstated. However, there is no evidence that the Union presented any of the evidence regarding why Robinson was absent after her decision day except for a discussion of the October 23, 1989 court appearance. No witnesses were presented. Central Brass refused to reinstate Robinson.
 
 
 12
 The next step in pursuing Robinson's grievance was binding arbitration. However, five officials of the Union voted unanimously not to advance Robinson's grievance to arbitration because they felt it was meritless. Robinson was informed of this decision in a letter dated November 9, 1989, but she was not given an explanation. She appealed the decision to the local Union. At a November 27, 1989 meeting of the local Union, Robinson claims that she tried to attend but was escorted away because the Union said she was no longer a member and could not be present as her grievance was to be discussed. The Union denies this contention. Stowes, who attended the meeting, confirms Robinson's account and also avows that no vote was taken and no discussion occurred regarding Robinson's grievance. However, the local Union claims to have voted 26-2 at the meeting in favor of not pursuing Robinson's grievance to arbitration. In any event, the local Union denied Robinson's appeal.
 
 
 13
 Next, Robinson appealed to the International Union Executive Board ("IEB"). The IEB rejected Robinson's appeal on August 30, 1990. Robinson never filed an appeal to the next level, the Public Review Board.
 
 B.
 
 14
 On November 1, 1990, Robinson commenced this hybrid § 301 action against Central Brass and the Union. Robinson alleged that Central Brass discharged her in violation of § 301 of the LMRA, 29 U.S.C. § 185; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1872, 42 U.S.C. § 1981; and Ohio Rev.Code Ann. § 4123.90. She alleged that the Union breached its duty of fair representation under § 301 of the LMRA.
 
 
 15
 Summary judgment motions were filed by both Central Brass and the Union. On April 11, 1991, Central Brass's motion was granted by the district court. The Union's motion was granted on December 19, 1991. Robinson appealed to this court. In Robinson v. Central Brass Mfg. Co. ("Robinson I "), 987 F.2d 1235 (6th Cir.), cert. denied, 114 S.Ct. 92 (1993), this court affirmed the judgment in favor of Central Brass but reversed and remanded the judgment in favor of the Union, holding that Robinson's attempt to invoke her internal union remedies tolled the statute of limitations period. Id. at 1237, 1243.
 
 
 16
 Upon remand, the Union filed a second motion for summary judgment. On January 31, 1995, the district court granted that motion, basing its summary judgment on two grounds: that plaintiff had not exhausted her internal union remedies and that there was no genuine issue of material fact as to whether the Union had breached its duty of fair representation. This timely appeal followed.
 
 II.
 
 17
 Plaintiff argues that the district court erred in granting defendant's motion for summary judgment. We review grants of summary judgment de novo. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Summary judgment is appropriate when the "pleadings, depositions, ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). Disputed facts will only prevent summary judgment when those disputes might affect the disposition of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 
 18
 In reviewing a summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold Inc., 369 U.S. 654, 655 (1962) (per curiam)). However, when the motion is supported by documentary proof, such as depositions or affidavits, the nonmoving party may not rest upon her pleadings but must present some " 'specific facts showing that there is a genuine issue for trial'." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56(e)). These facts must be more than a scintilla of evidence and must meet the standard of "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...." Anderson, 477 U.S. at 252.
 
 
 19
 The first basis of the district court's grant of summary judgment to the Union was that plaintiff had failed to exhaust her internal union remedies. In most instances, an employee filing an action under § 301 of the LMRA is first required to exhaust all internal union remedies. Clayton v. International Union, UAW, 451 U.S. 679, 681 (1981). However, courts are given discretion in imposing the exhaustion requirement based on three relevant factors: (1) the effect of any hostility on the part of union officials on the employee's chances of obtaining a fair hearing, (2) the adequacy of relief attainable by internal union appeals, and (3) the effect which a delay from the internal union remedies could have on receiving a judicial hearing. Id. at 689.
 
 
 20
 In the present case, the district court concluded that there was no genuine issue of material fact regarding any hostility on the part of international union officials and that the internal union remedies were not futile for plaintiff. We conclude that the district court was correct in holding that there was no hostility. Plaintiff had failed to allege any hostility by officials in the international union comprising the Public Review Board, and hostility by local union officials cannot be imputed to members of the international union. Monroe v. International Union, UAW, 723 F.2d 22, 25 (6th Cir.1983).
 
 
 21
 In reaching the conclusion that an internal appeal would not be futile, the district court refused to apply the holding in Clayton that "where an internal union appeals procedure cannot result in reactivation of the employee's grievance or an award of the complete Clayton, 451 U.S. at 685 (emphasis added), even though an appeal by Robinson to the Public Review Board could not have resulted in either the reinstatement she was seeking or the reactivation of her grievance. See Robinson I, 987 F.2d at 1237, 1240 (discussing the Union's collective bargaining agreement with Central Brass). Instead, the district court reasoned that the dismissal of Central Brass from the case left plaintiff with money damages as her only remedy, and, because the Public Review Board can grant money damages, plaintiff's remedy would have been complete as against the Union had she exhausted her internal appeals. The district court also reasoned that "[i]t would be unfair to give Robinson the benefit of tolling the statute of limitations while she pursued internal union remedies, and then not require her to exhaust those remedies." J.A. 21.
 
 
 22
 In reaching those conclusions, the district court not only ignored the United States Supreme Court's holding in Clayton, but also ignored the clear implications of this court's decision in Robinson I which specifically discussed Clayton 's similarity to plaintiff Robinson's case and stated that Robinson could still achieve her ultimate goal of reinstatement if the district court determined that the Union improperly withdrew Robinson's grievance. Robinson, 987 F.2d at 1240, 1245. Furthermore, it is illogical to evaluate plaintiff's failure to exhaust her internal union remedies in 1990 based on the dismissal of Central Brass from plaintiff's § 301 action one year later in district court. Accordingly, because an internal appeal concerning the Union's failure to advance plaintiff's grievance to arbitration could not result in either reinstatement of plaintiff to her former position or reactivation of her grievance, plaintiff was not required to exhaust her internal union appeals, and the district court's conclusion to the contrary was erroneous as a matter of law.
 
 
 23
 However, in granting defendant's motion for summary judgment, the district court set out an alternative basis for its decision; namely, that there was no genuine issue of material fact as to whether the Union had violated its duty of fair representation. In Vaca v. Sipes, 386 U.S. 171, 190 (1967), the Supreme Court first stated that a union violates its duty of fair representation when it is proved that a union's "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." A plaintiff alleging a breach of the duty of fair representation must also prove that the union's arbitrary, discriminatory, or bad faith behavior "tainted the grievance procedure such that the outcome was more than likely affected by the Union's breach." Dushaw v. Roadway Express, Inc., 66 F.3d 129, 132 (6th Cir.1995), cert. denied, 116 S.Ct. 1353 (1996).
 
 
 24
 Proving that a union behaved in bad faith or a discriminatory manner is a relatively straightforward process. Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 584 (6th Cir.1994). However, in order to prove arbitrariness, "mere negligence or poor judgment" will not suffice, but, rather, a plaintiff must prove that the union's behavior was so unreasonable as to be irrational. Id. While a union must undertake a reasonable investigation in defending its members in grievance proceedings, a union is not required "to exhaust every possible remedy requested by a member facing disciplinary action." Id. at 584. Recklessness or gross negligence on the part of the union can constitute arbitrary conduct and unfair representation. Linton v. United Parcel Serv., 15 F.3d 1365, 1372 (6th Cir.1994). It is also arbitrary for a union to process a grievance in a perfunctory manner. Vaca, 386 U.S. at 190.
 
 
 25
 In the present case, plaintiff Robinson alleges that the Union's failure to adequately investigate the reasons behind her absences and to present those reasons to Central Brass during the grievance procedures was in bad faith. Robinson alleges that the Union's bad faith continued when the Union refused to allow Robinson to present her side of the story at the local membership vote on November 27, 1989, and when, without explanation or discussion, the Union refused to pursue her grievance to arbitration. Robinson also charges that the Union behaved arbitrarily as evidenced by the perfunctory manner in which it processed her grievance.
 
 
 26
 The district court concluded that Robinson's allegations did not amount to unfair representation on the part of the Union as a matter of law and that the factual issues as to why Robinson missed work were irrelevant due to the "no-fault" attendance policy of Central Brass. We disagree with the district court's conclusion that the reasons for Robinson's absences were irrelevant because we do not think that Central Brass's attendance policy can accurately be described as "no-fault." The policy states that employees should tell their foreman why they were late or tardy because "each and every absence will be counted and evaluated, based on the circumstances." J.A. 67. While it is true that there were no longer "excused absences" under the new policy, the new policy did provide for case-by-case evaluation where the reasons for the absences were important. Thus, the failure of the Union to present the reasons for Robinson's absences to Central Brass cannot be excused by simply characterizing the attendance policy as "no-fault."
 
 
 27
 However, there is still a question as to whether the facts as alleged by plaintiff Robinson amount to bad faith or arbitrary behavior on the part of the Union. Establishing a genuine issue of material fact as to a union's breach of its duty of fair representation is a very difficult endeavor. While it was unwise for the Union not to have presented the reasons behind Robinson's absences to Central Brass, such behavior cannot be deemed "so far outside a 'wide range of reasonableness,' as to be irrational." Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (citation omitted). This is especially so given the rigidness of Central Brass's absenteeism policy and Robinson's excessive absenteeism. The Union made a judgment call in pleading for leniency and not focusing on the specific reasons behind the absences. Moreover, the Union made the very argument that Robinson had requested when it argued to Central Brass that Robinson's absenteeism rate had improved. The Union's investigation was reasonably conducted, as the union chairman interviewed Robinson's supervisors and examined her files.
 
 
 28
 Further, the Union's failure to take Robinson's grievance to arbitration was not a breach of its duty of fair representation because a union is not required to pursue every grievance to arbitration, especially when the union believes that the grievance lacks merit. Vaca, 368 U.S. at 191. Central Brass followed its absenteeism policy in discharging Robinson, and the Union's conclusion that Robinson's case was meritless was reasonable. The mere fact that the Union's letter to Robinson informing her that her grievance would not be taken to arbitration did not give the reasons why does not support the conclusion that the Union behaved arbitrarily or in bad faith.
 
 
 29
 Additionally, the Union did not breach its duty of fair representation in denying plaintiff the opportunity to speak at the local membership meeting when her appeal was to be discussed. This action by the Union did not involve its representation of Robinson to Central Brass. Whether the Union erred in not allowing plaintiff to speak is of no consequence to the issue of fair representation as the only significance of the meeting to Robinson was the internal vote on whether Robinson was entitled to have her grievance taken to arbitration. As previously stated, the decision not to pursue Robinson's grievance to arbitration was reasonable.
 
 
 30
 Plaintiff Robinson cites numerous cases in her brief to support her arguments that there is a genuine issue of material fact as to whether the Union breached its duty of fair representation. However, plaintiff's cases reveal the high burden established by the courts in fair representation cases as only two of the many cases cited by plaintiff resulted in a favorable disposition to the union member. Accordingly, the district court was correct in granting summary judgment to the Union for the reason that there is no genuine issue of material fact indicating that the Union breached its duty of fair representation.[1]
 
 III.
 
 31
 For the reasons stated, the district court's grant of summary judgment to defendant is AFFIRMED.
 
 
 
 *
 The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 We note that in order for Robinson to recover from the Union under § 301 of the LMRA, she must not only prove that the Union violated its duty of fair representation, but she must also prove that her discharge was a violation of the collective bargaining agreement. VanDerVeer v. United Parcel Serv., 25 F.3d 403, 405 (6th Cir.1994). Because there were other grounds for granting summary judgment, the district court did not decide whether Central Brass discharged Robinson in violation of the collective bargaining agreement. Likewise, we need not address this issue