**TEAMSTERS FREIGHT EMPLOYEES LOCAL UNION NO. 480, Affiliated With International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiff-Appellant,**

v.

**BOWLING GREEN EXPRESS, INC., Defendant-Appellee.**

No. 82–5248.

United States Court of Appeals, Sixth Circuit.

Argued March 21, 1983.

Decided May 18, 1983.

GILMORE, District Judge.

This is an appeal from an order of the district court dismissing a complaint brought under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, seeking enforcement of a grievance award. The district court held that the collective bargaining agreement between the parties denied enforceability of a grievance award when the employer refused to participate in the grievance process. Because the district court's interpretation of the agreement is inconsistent with both the general philosophy of the Labor Management Relations Act and with the logic of the collective bargaining agreement itself, and because its interpretation would conflict with basic national labor policies favoring the peaceful resolution of labor disputes, we reverse.

Bowling Green Express is a corporation engaged in the interstate trucking industry, and certain of its employees in Nashville, Tennessee are represented by the Teamsters Union. The Teamsters Union and Bowling Green were partners to a collective bargaining agreement, specifically the National Master Freight Agreement (NMFA) and the Southern Conference Local Freight Forwarding Pick-Up and Delivery Supplemental Agreement (Southern Conference Supplement).

In May 1981, a dispute arose between the parties over defendant's failure to pay employees in Nashville at the negotiated rates required by the collective bargaining agreement. Local 480 then filed a grievance that was processed through the grievance mechanism provided for in the Southern Conference Supplement. This dispute was eventually submitted to a multi-state grievance panel, consisting of an equal number of employers and union representatives. Although given notice, appellee-defendant failed to appear at three successive grievance panel meetings scheduled to hear the dispute. At the August 1981 meeting, with defendant again not present, the grievance

Cecil D. Branstetter, C. Dewey Branstetter, Jr., Branstetter, Kilgore & Stranch, Nashville, Tenn., Robert Baptiste (argued), Washington, D.C., for plaintiff-appellant.

Wade B. Cowan [Lead Counsel] (argued), Nashville, Tenn., for defendant-appellee.

Before MARTIN and WELLFORD, Circuit Judges, and GILMORE, District Judge.*

---

* The Hon. Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

was presented to the multi-state grievance panel and was "sustained by default," with costs to be paid by defendant. Plaintiff then brought the instant suit seeking enforcement of the decision of the grievance panel.

█ The district court held, and we agree, that final and binding decisions made by joint employer-union grievance panels, like the one in the instant case, must be enforced under § 301 of the Labor Management Relations Act of 1947. These decisions are entitled to the same deference as that given to the decision of an arbitrator under national labor law. *General Drivers Local 89 v. Riss & Co.,* 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). However, the district court held that the decision of the grievance panel was not final or binding if either party refused to appear at the proceedings, and therefore refused to enforce the decision of the grievance panel. We feel the court erred in this determination.

The district court interpreted Section 1(d) of Article 45 of the contract, which provides that "refusal of either party to submit to or appear at, the grievance procedure at any stage, ... withdraws the benefits of this Article," to deprive the grievance commit-

tee of the authority to resolve the grievance in accordance with the collective bargaining agreement if either party failed or refused to appear at the hearing.[1] The district court dismissed the case. The court concluded that one of the "benefits" of the article was a final and binding decision of the grievance committee, and that, under § 1(d) of Article 45 of the agreement, the refusal or failure of either party to submit to or appear at the grievance procedure withdrew the benefits of the Article.

In short, the position of appellee, which was accepted by the district court, was that a party to the agreement could elect to submit itself to the grievance procedure or elect not to, depending upon what it felt was most advantageous at the time. If either party refused to submit to the grievance procedure, then there was no binding decision and each party was free to pursue whatever remedies it wanted, including a strike by the Union.

The interpretation adopted by the district court would give judicial approval to an "economic warfare" interpretation of the agreement and would punish parties who submit grievances to arbitration and reward those who refuse to appear.[2] Such an

---

1. The collective bargaining agreement is governed by the National Master Freight Agreement (NMFA) and its Southern Conference Supplement. Articles 1 to 39 comprise the NMFA, and Articles 40 to 61 compromise the supplemental agreement covering local cartage.

Article 8 of the NMFA states that all grievances and questions of interpretation under the Agreement shall be submitted to the grievance procedure, and that all grievances arising under the supplemental agreements are to be processed in accordance with the grievance procedure of the applicable supplement. In return, the parties agreed, with limited exceptions, that "no work stoppage, slowdown, walkout or lockout shall be deemed to be permitted or authorized ...."

The grievance procedure in Article 44 provides that if grievances are not resolved at the local level, they are to be submitted to a multi-state grievance panel consisting of an equal number of employer and union representatives. Article 45, § 1, states that "[t]he Unions and the Employers agree that there shall be no strikes, lockouts, tieups, or legal proceedings without first using all possible means of settlement as provided for in this Agreement of any

controversy which might arise. Disputes shall be first taken up between the Employer and the Local Union involved. Failing adjustment by these parties, the following procedure shall then apply:"

Section 1(a) of Article 45 provides: "Where a State or Multiple State Committee, by a majority vote, settles a dispute no appeal may be taken ... Such decision will be *final and binding on both parties.*" (Emphasis added.)

Section 1(d) of Article 45 provides: "Failure of any Committee to meet without fault of the complaining side, *refusal of either party to submit to, or appear at,* the grievance procedure at any stage, or failure to comply with any Committee decision *withdraws the benefits of this Article.*" (Emphasis added.)

2. This is true in the instant case where Bowling Green Express has raised as a defense to its payment of lower wage rates its inability to pay due to economic conditions. The district court correctly noted that this defense is not an issue in this lawsuit, being a matter to be first submitted to the grievance procedure. Bowling Green's legal theory would force the union to choose between a strike, which could possibly

interpretation is totally contrary to national labor policy favoring the peaceful resolution of labor disputes, and contrary to basic contract law. A party cannot urge, as a defense to a suit on the contract, his own non-compliance with its provisions.

Any agreement to submit disputes to a grievance procedure is a standard *quid pro quo* for agreeing not to strike, and is a well established and favored way to resolve labor disputes. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ A far more reasonable interpretation of the agreement is that the "withdrawal clause" of § 1(d) merely withdraws the "no-strike" pledge contained in the opening paragraph of Article 45 of the Agreement during pendency of grievance proceedings. In other words, the party who refuses to participate or comply with the grievance proceeding does so at its own risk, but non-compliance or non-participation does not vitiate the intent of the parties to give final and binding effect to decisions made by the grievance panel under § 1(a).

This interpretation is further supported by Rule 5 of the grievance committee's Rules of Procedure, which provides:

Failure of either party to be present [at a grievance hearing] shall not deprive the other party of the benefit of the grievance procedure.

Our interpretation of the contract is wholly consistent with Rule 5 in denying the benefits of the no-strike, no-lockout pledge to the defaulting party, but preserving the benefits of the grievance procedure to the complying party.

bankrupt an already economically weak company and cause further loss of jobs, or to give up any claim to wage rates provided for by the contract. Labor policy favoring arbitration of such grievances is designed to avoid forcing parties to make such decisions wherever possible.

Clearly a person cannot selectively agree to submit to arbitration and be rewarded by refusing to appear. In *Truck Drivers & Helpers Local 728 v. Georgia Highway Express, Inc.*, 328 F.2d 93 (5th Cir.1964), the court dealt with a prior Southern Conference Agreement with virtually the identical language as that here. The employer failed to comply with a grievance decision and used the "withdrawal clause" to argue that it was released from any obligation to abide by the decision. The Fifth Circuit disagreed, holding that the "withdrawal of benefits" clause merely referred to the no-strike pledge and did not vitiate the grievance procedure:

A contract which provides that a 'decision will be final and binding on both parties,' ... and which also provides in effect that it will be binding on neither at the option of either presents such an irreconcilable inconsistency as to lead to the conclusion that no such absurd result was intended, unless it be demonstrated that the contract, when considered as a whole, is subject to no other reasonable interpretation."

*Id.* at 96.

To the same effect is *Teamsters Local Unions v. Braswell Motor Freight Lines, Inc.*, 392 F.2d 1 (5th Cir.1968), *cert. denied*, 401 U.S. 937, 91 S.Ct. 926, 28 L.Ed.2d 217 (1971).[3] There, the court enforced a grievance committee decision despite the employer's refusal to participate. The court held that arbitration decisions made under that agreement, which was virtually identical to the one in question here, are final and binding, and that "[n]either the arbitrability of the issue nor the finality of the body's decision is watered down by Braswell's election to stay away from the arbitration, for arbitration agreements cannot thus be frustrated." *Id.* at 9.

**3.** *Braswell* remains the definitive Fifth Circuit law. *International Association of Machinists District 776 v. Texas Steel Company*, 538 F.2d 1116, 1120 n. 6 (5th Cir.1976).

We associate ourselves with these two decisions of the Fifth Circuit. To allow a party to avoid the effect of a grievance proceeding by merely refusing to participate would destroy any incentive to peacefully negotiate labor disputes. Because this is clearly not in keeping with national labor policy, nor in keeping with the most reasonable interpretation of this agreement, we hold, as a matter of law, that under the Southern Conference Supplement, as presently drafted, a party cannot avoid the final and binding effect of a decision of the joint grievance panel by refusing to appear at the proceedings. Plaintiff is entitled to summary judgment. Reversed and remanded for proceedings consistent with this opinion.