**PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 22 and Alan Kirk, Plaintiffs,**

v.

**YBARRA CONSTRUCTION COMPANY, Defendant.**

No. 03–70531.

United States District Court, E.D. Michigan, Southern Division.

Nov. 4, 2003.

Delmas A. Szura, Fischer, Franklin, Detroit, MI, Kenneth J. Fiott, Cameron, Miller, Plymouth, MI, for plaintiffs.

Delmas A. Szura, Fischer, Franklin, Detroit, MI, Patrick M. Carmody, Jr., Saline, MI, for defendant.

### OPINION AND ORDER REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

## I. INTRODUCTION

Plaintiffs Painters and Allied Trades District Council No. 22 (the "Union") and Alan Kirk commenced this action in this Court on February 7, 2003, seeking to enforce a grievance committee decision ordering Defendant Ybarra Construction Company to pay $1,775.55 in back wages to Plaintiff Kirk for work he performed through December of 2001. This Court's subject matter jurisdiction rests upon Plaintiffs' assertion of a federal claim under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

By motion filed on May 30, 2003, Plaintiffs now seek summary judgment in their favor on their claim to enforce the grievance award. In support of this motion, Plaintiffs contend that the Union filed a grievance on behalf of Plaintiff Kirk, that this matter was referred to and heard by a Joint Committee of union and management representatives in accordance with the collective bargaining agreement ("CBA") executed by Defendant, and that the Joint Committee entered an award which, under the terms of the CBA, is final and binding on all parties. Defendant filed a response in opposition to this motion on June 20, 2003, arguing that the Joint Committee's decision exceeded the scope of the underlying grievance filed by the Union on behalf of Kirk, and that certain procedural flaws tainted the hearing of this grievance before the Joint Committee.[1]

On October 30, 2003, the Court convened a conference in chambers with counsel for the parties to address Plaintiffs' motion. Having reviewed the parties' written submissions and the record as a whole, and having considered the statements of counsel at the October 30 conference, the Court now is prepared to rule on Plaintiffs' motion. This Opinion and Order sets forth the Court's rulings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts and procedural background of this case are relatively straightforward. Defendant Ybarra Construction Company is engaged in the construction industry, and Plaintiff Alan Kirk was employed by Defendant as a journeyman taper from February of 2001 until sometime in 2002.[2] Plaintiff Kirk's employment was governed by a collective bargaining agreement ("CBA") executed in March of 2000 between the Plaintiff Union and Defendant. The terms of the CBA will be discussed below as relevant to the issues presented here.

On May 3, 2002, the National Labor Relations Board ("NLRB") filed a complaint charging that Defendant had committed unfair labor practices by retaliating against Plaintiff Kirk for engaging in protected activity. Specifically, the complaint

---

**1.** Plaintiffs elected not to file a reply brief in further support of their motion.

**2.** The record is unclear as to the date Plaintiff Kirk's employment was terminated. The affidavit of Ann M. Ybarra, Defendant's president and chief executive officer, states that Kirk was discharged on September 19, 2001. Yet, other materials in the record indicate that Kirk was still employed by Defendant during the first few months of 2002, and the grievance committee decision rests upon a finding that Kirk was underpaid for work performed through December of 2001. Thus, it would appear that Kirk remained an employee of Defendant through the first portion of 2002, at least.

alleged that on December 20, 2001, Kirk had sought payment of the prevailing wage rate for his work, and that Kirk had enlisted the Union's support in pursuing this claim and filing a grievance.[3] Within a few weeks following Kirk's protected activity, Defendant allegedly demoted Kirk to first-year apprentice, reduced his hourly rate and number of hours worked, told him there was no work available for him, and ultimately discharged him on January 18, 2002.

The NLRB set this matter for a hearing on July 22, 2002. Before the matter could be heard, however, Defendant filed an answer contending that the complaint's allegations should be addressed under the dispute resolution provisions of the CBA. Through an order dated July 22, 2002, the NLRB adopted this proposal, withdrawing its complaint and deferring further proceedings until the matter could be addressed through the CBA's grievance and arbitration procedures. Regarding the potential concern that any such grievance would be untimely under the CBA,[4] the NLRB's order stated that Defendant had agreed to "waive all time limits with regard to the filing of any current or potential grievances involving the allegations contained in the [NLRB] Complaint." (Defendant's Response, Ex. C, NLRB 7/22/2002 Order at 1.)

According to the Union, a grievance was filed on Kirk's behalf in September of 2002.[5] This grievance included the following charges:

Since January 2002 Employer discharged Employee Allen Kirk, because of his grievance filing activities regarding his wages. (Per Article II Section 1)

Since December 2001 Ybarra Construction has refused to assign work to Allen Kirk, because of his union activity.

Employer demoted Allen Kirk from Journey person to Apprentice, because of union activity.

Reduction in wage rate of Allen Kirk, because of union activity.

Since December 2001 Employee Allen Kirk has been told by Ybarra Construction that they have no work for him.

(Plaintiffs' Motion, Ex. B.) Notably, this grievance, like the NLRB complaint, addressed only the claims of retaliation for protected activity, and not the underlying wage-related complaint raised by Kirk in December of 2001.

Pursuant to Article XX of the CBA, this grievance was referred to a Joint Committee, consisting of two members appointed by the Union and two members selected by each of two trade associations, the Michigan Drywall Contractors Association and the Architectural Contractors Trade Association. The Joint Committee held a hearing on the grievance on October 2, 2002. Though Defendant's counsel and its president, Ann Ybarra, were present at this hearing, Ybarra has stated in an affidavit that she and her attorney were not "given an opportunity to present our evidence to demonstrate that we did not take any adverse action against Alan Kirk due to any union activity." (Defendant's Response, Ex. E, Ybarra Aff. at ¶ 18.)

---

**3.** It is not clear whether a formal grievance actually was filed concerning this wage dispute. At a minimum, no such grievance appears in the record presently before the Court. At the October 30 conference, Plaintiffs' counsel indicated that Kirk lodged a "prevailing wage" complaint in some forum, and that this matter was resolved in his favor.

**4.** As discussed below, the CBA's grievance provision generally requires that employee complaints must be lodged within 21 days of an alleged violation of the CBA.

**5.** This grievance is undated, and Defendant states that it did not receive a copy until just a few minutes before the October 2, 2002 hearing on this matter.

Following the October 2 hearing, the Joint Committee issued a unanimous decision awarding $1,775.55 in unpaid wages to Plaintiff Kirk. In support of this award, the Joint Committee found that Kirk "was not paid the proper wage rate but was paid $.140 [sic] per hour less through December, 2001," and that "there is currently owing the Grievant $1,265.25 [sic] hours at $1.40 per hour for a total of $1,775.55." (Plaintiffs' Motion, Ex. C, Joint Committee Decision at 2.) Regarding the issue of retaliation, however, the Joint Committee expressed its belief "that the testimony and claim for the January—March, 2002 lack of employment and discrimination from union activity should be referred to the National Labor Relations Board and should be proceeded [sic] as such." (*Id.*) Finally, the Joint Committee's decision provided that "[i]n the event it becomes necessary to seek enforcement of this award in a court of competent jurisdiction, the party against whom enforcement is sought shall pay all court costs and attorney fees." (*Id.*) [6]

Defendant has refused to pay this award of back wages.[7] Accordingly, Plaintiffs brought this suit on February 7, 2003, seeking to enforce the Joint Committee's decision, and also seeking its attorney fees and costs as called for in this decision.

## III. *ANALYSIS*

### A. The Standards Governing the Court's Summary Judgment Inquiry

In their present motion, Plaintiffs seek summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56. Under this Rule, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In this case, the legal issues are narrow and the record is limited, resulting in a fairly straightforward Rule 56 inquiry. Specifically, the sole issue before this Court is whether to enforce the Joint Committee's award, and both parties' submissions are directed exclusively at this issue. Accordingly, in the event that Plaintiffs have not established their entitlement to summary judgment, the Court believes it appropriate under the circumstances to consider whether Defendant might be so entitled. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The Court now turns to these inquiries.

### B. The Joint Committee's Decision Is Unenforceable as a Matter of Law.

In this case, the parties agree that the grievance filed by the Union on behalf of Plaintiff Alan Kirk was properly referred for disposition by the Joint Committee established under Article XX of the CBA. In addition, this same CBA provision clearly authorizes the Joint Committee to "decide how the case shall be disposed of" and "assess damages or take any other disciplinary actions which it deems appropri-

---

**6.** The Joint Committee's decision somewhat refutes Defendant's contention that it was not given an opportunity to present evidence during the October 2 hearing. Specifically, the decision states that "the Attorney for Ybarra Construction answered the charges presented," that "[q]uestions were asked of [the attorney] and Ms. Ybarra," and that counsel "in essence denied the charges of any violations by his client." (*Id.* at 1.)

**7.** Under the CBA, the Joint Committee may "review and alter its decision" upon "good cause shown to it within sixty (60) days after it renders its decision." (CBA, Art. XX, § 1(E).) Defendant states that it sent a letter to the Joint Committee requesting such review, but that it received no response.

ate." (CBA, Art. XX, § 1(E).) Finally, the CBA provides that the Joint Committee's decision "shall be final and binding on all parties to this Agreement and to the hearing." (*Id.*) In light of all this, Plaintiffs contend that they are entitled as a matter of law to an order enforcing the Joint Committee's award of back wages to Plaintiff Kirk.

Under the Supreme Court's Steelworkers' Trilogy and its progeny, the arbitration of labor disputes is strongly favored, and the courts generally will refuse to review the merits of an arbitration award. *See, e.g., United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *Morris v. Werner–Continental, Inc.*, 466 F.2d 1185, 1190–91 (6th Cir. 1972). An arbitrator's decision will be enforced "so long as it draws its essence from the collective bargaining agreement" and the arbitrator confines himself to "interpretation and application of" this agreement, as opposed to "dispens[ing] his own brand of industrial justice." *Enterprise Wheel & Car*, 363 U.S. at 597, 80 S.Ct. at 1361. These principles apply as well to decisions of joint grievance committees on matters submitted to them pursuant to the terms of the collective bargaining agreement. *See Teamsters Freight Employees Local Union No. 480 v. Bowling Green Express, Inc.*, 707 F.2d 254, 256 (6th Cir. 1983) (holding that "final and binding decisions made by joint employer-union grievance panels" are "entitled to the same deference as that given to the decision of an arbitrator under national labor law"); *Morris*, 466 F.2d at 1190–91.

Notwithstanding this broad deference, the courts will not enforce "an award that clearly goes beyond the grievance submitted to the arbitrator." *Johnston Boiler Co. v. Local Lodge No. 893, Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers,* 753 F.2d 40, 43 (6th Cir.1985); *see also Buckeye Cellulose Corp. v. District 65, Division 19, United Auto Workers,* 689 F.2d 629, 631 (6th Cir.1982). Because "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," the parties to a collective bargaining agreement retain the power to "limit the arbitrator's authority by careful drafting of the submission." *Johnston Boiler,* 753 F.2d at 43. Even so, the courts will not insist that "arbitrators stay narrowly within the technical limits of the submission," and "the presumption of authority that attaches to an arbitrator's award applies with equal force to his decision that the award is within the submission." 753 F.2d at 43.

In this case, Defendant argues that the Joint Committee's decision fails to satisfy even this deferential standard, and hence is not entitled to enforcement. In support of this contention, Defendant notes that the grievance filed by the Union shortly before the Joint Committee's October 2, 2002 hearing details a number of alleged instances of retaliation against Plaintiff Kirk's exercise of protected activity. According to the grievance, these alleged incidents occurred since December of 2001. Moreover, the Union filed this grievance pursuant to the NLRB's July 22, 2002 Order, which directed the parties to address Plaintiff Kirk's claims of retaliation through the CBA's dispute resolution procedures rather than before the Board. The charges pending before the NLRB, like the ones outlined in the Union's subsequent grievance, pertained solely to Defendant's allegedly retaliatory conduct on or after December 20, 2001.

Despite this procedural context and the express language of the Union's grievance, Defendant argues that the Joint Committee did not address the issue of retaliation, but instead made an award on a matter outside the scope of the proceeding. The

Court agrees that this is a fair reading, at least, of the Joint Committee's October 2, 2002 decision. The only violation identified in that decision was that Plaintiff Kirk "was not paid the proper wage rate but was paid $.140 [sic] per hour less through December, 2001." (Plaintiffs' Motion, Ex. C, Joint Committee Decision at 2.) Based on this determination, the Joint Committee awarded back wages for 1,265.25 hours, a period that surely must extend back several months from the end date of December, 2001. Seemingly, then, the Joint Committee addressed the underlying grievance apparently filed by Plaintiff Kirk in December of 2001 concerning Defendant's failure to pay the prevailing wage rate. This underlying wage dispute is cited in the grievance heard by the Joint Committee on October 2, 2002, but only as a specific example of Kirk's protected activity that allegedly triggered various acts of retaliation, and not as a separate basis for relief.

Regarding the charges of retaliation that *were* submitted for its resolution, the Joint Committee expressly declined to address these matters. Rather, the October 2, 2002 decision states that "[t]he Committee felt that the testimony and claim for the January—March, 2002 lack of employment and discrimination from union activity should be referred to the National Labor Relations Board and should be proceeded [sic] as such." (*Id.*) Thus, while the NLRB adopted Defendant's proposal that these allegations of retaliation should be addressed through the CBA's grievance and arbitration procedures, the Joint Committee passed on these matters and determined that they should be referred back to the NLRB.

Under this record, the Court certainly cannot find as a matter of law that the Joint Committee's decision is entitled to enforcement. The evidence before this Court does not demonstrate that Plaintiff Kirk's underlying wage claim was properly presented for the Joint Committee's resolution at the October 2, 2002 hearing. Indeed, the record does not contain *any* grievance, whether submitted to the Joint Committee or otherwise, in which it is claimed that Kirk was paid at an improper wage rate in the period leading up to December of 2001. Rather, other materials in the record merely mention in passing that Kirk lodged such a complaint back in December of 2001, allegedly triggering various acts of retaliation by Defendant. Absent the submission of a grievance actually raising this wage complaint, the Joint Committee seemingly exceeded its authority by addressing the matter and awarding back wages for this purported violation.

As noted, such a concern may be overcome in some cases through an arbitrator's determination that the parties' submissions have fairly raised an additional issue. Such a decision, like the arbitrator's determination on the merits, is entitled to considerable deference and is not readily overturned. Yet, there is nothing in the Joint Committee's decision in this case that could remotely be viewed as a finding that Kirk's wage dispute was properly encompassed within the sole grievance in the record, the one filed by the Union shortly before the October 2, 2002 hearing. Rather, it appears that the Joint Committee merely assumed, seemingly without foundation, that Kirk's wage complaint had been presented for its resolution. Even under the deferential standard set forth above, the Court cannot find as a matter of law that the Joint Committee's decision represents an appropriate exercise of authority under the dispute resolution provisions of the CBA.[8]

---

8. Indeed, Defendant suggests another reason why the Joint Committee's award of back wages might be unenforceable. Under the CBA, "[a]n employee having any complaint on wages, travel expenses, or premium rates,

To the contrary, where the discovery period is closed, the record is complete, and the parties' submissions and the case as a whole are directly solely at the issue of enforcing the Joint Committee's decision, the Court has no difficulty in concluding that this decision is **unenforceable** as a matter of law. Plaintiffs themselves have submitted all of the materials necessary to this determination—namely, the Union's grievance alleging various acts of retaliation, and the Joint Committee's decision declining to address these retaliation claims, and instead awarding back pay on a matter not set forth in the Union's grievance. In addition, Defendant's response to Plaintiffs' motion specifically and pointedly raised the argument that the Joint Committee's decision exceeded the scope of the Union's submission. Despite their opportunity to reply, Plaintiffs elected not to respond to this contention, nor did they submit any additional materials

that might reconcile the evident inconsistency between the Union's grievance and the Joint Committee's award. Finally, at the October 30 conference, Plaintiffs' counsel conceded that the Joint Committee was presented with only this single grievance, unaccompanied by any other submission setting forth Kirk's earlier wage complaint.

Under these circumstances, where no triable issue of material fact appears in the record, and where neither party has suggested that such an issue might yet be raised through other materials not provided to the Court, there is no remaining barrier to the disposition of this case as a matter of law. See, e.g., ADR North America, L.L.C. v. Agway, Inc., 303 F.3d 653, 657 n. 1 (6th Cir.2002); Goldstein v. Fidelity & Guaranty Ins. Underwriters, Inc., 86 F.3d 749, 750–51 (7th Cir.1996). In particular, the record establishes that the wage dispute resolved in the Joint

---

or any other complaint of violation of the working agreement, must bring such complaint to the attention of his employer and [the Union] as soon as possible, but no later than 21 days from the date of the violation." (Defendant's Response, Ex. B, CBA Art. XX, § 9.) Along these same lines, the CBA further provides that "[n]o employer shall be required to pay back wages, travel expense[s], premium rates or any other employee benefits under the working agreement, excepting fringe benefit contributions, prior to 21 days to the filing of a complaint by an employee with his employer and [the Union]." (Id.) Consequently, even if Kirk's underlying wage complaint had been properly submitted for resolution by the Joint Committee, its award of over 1,200 hours in back wages arguably would exceed the scope of the CBA's 21–day limitation on such awards. In addition, even if the grievance filed by the Union shortly before the October 2, 2002 hearing were construed as encompassing Kirk's wage complaint, any allegations in that grievance concerning wage shortfalls prior to December of 2001 arguably would be time-barred.

As noted earlier, in electing to defer any further proceedings on Kirk's claims of retaliation, the NLRB expressly addressed a possible concern regarding the CBA's 21–day limit for making complaints. Specifically, the NLRB's July 22, 2002 Order notes Defendant's agreement to "waive all time limits with regard to the filing of any current or potential grievances involving the allegations contained in the Complaint." (Defendant's Response, Ex. C, NLRB 7/22/2002 Order at 1.) Yet, the NLRB complaint, like the Union's subsequent grievance, referred to Kirk's initial wage complaint merely as a triggering cause of Defendant's ensuing acts of retaliation. It is not entirely clear, then, whether the waiver embodied in the NLRB's Order necessarily would permit an untimely assertion of Kirk's underlying wage complaint beyond the CBA's usual 21–day limit.

In any event, these matters are not for this Court to decide. The limited inquiry in this case is whether to enforce the Joint Committee's decision. If this decision is deemed unenforceable, the parties themselves must determine the claims to pursue and the forum in which to pursue them. The proper interpretation of the CBA's 21–day limitation and the NLRB's Order simply are not matters within the scope of this proceeding.

Committee's decision was not raised in the Union's grievance or any other submission. It follows that the Joint Committee's award exceeded the authority vested in the Committee under the CBA, and hence is not entitled to enforcement.[9]

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' May 30, 2003 Motion for Summary Judgment is DE-NIED. IT IS FURTHER ORDERED that summary judgment is instead awarded in Defendant's favor.

**9.** In light of this ruling, the Court need not address Defendant's additional contention that it was denied a fair opportunity to present evidence and arguments at the October 2, 2002 hearing before the Joint Committee. The Court notes, however, that Plaintiffs have utterly failed to refute the somewhat troubling allegations in Ann Ybarra's affidavit concerning procedural irregularities at the October 2 hearing.

In addition, the Court finds no basis for referring this matter to arbitration, as suggested in Defendant's response to Plaintiffs' motion. Again, the sole issue before this Court is whether to enforce the Joint Committee's decision. This issue having been decided, the Court deems it inappropriate to opine as to which forum should next address Kirk's wage and retaliation claims. Indeed, if, as suggested at the October 30 conference, the retaliation claims are now back before the NLRB, this Court lacks jurisdiction to exercise any authority over these claims.